[No. 19032.    Department One. — March 2, 1893.]

NAT. KENNEDY, TREASURER, ETC., APPELLANT, *v.* E. H. MILLER, AUDITOR, ETC., ET AL., RESPONDENTS.

PUBLIC SCHOOL SYSTEM — CONSTITUTIONAL LAW. — The provisions of article IX. of the constitution making education and the management and control of the public schools a matter of state supervision, and d recting the legislature to provide a "system of common schools," require the adoption of one system, which shall be applicable to all the common schools.

ID. — SCHOOL DISTRICT — POLITICAL CODE — CHARTER OF MUNICIPAL CORPORATION. — The legislative declaration, in section 1576 of the Political Code, that every incorporated city is a school district, though it makes each school district a public corporation, does not import into the organization any of the provisions of the city charter, or limit the powers and functions which, as a school district, it has by virtue of the Political Code.

| 97 | 429 |
| 97 | 441 |
| 97 | 429 |
| 99 | 152 |
| 97 | 429 |
| 104 | 350 |
| 97 | 429 |
| 117 | 357 |
| 97 | 429 |
| 129 | 606 |
| 97 | 429 |
| 134 | 593 |
| 97 | 429 |
| 137 | 375 |
| 97 | 429 |
| 139 | 461 |
| 97 | 429 |
| 140 | 561 |
| 140 | 562 |
| 97 | 429 |
| 148 | 382 |

ID. — GENERAL LAWS — LIMITATION OF CITY CHARTER. — All city charters are limited by the operation of general laws.

ID. — CITY BOARDS OF EDUCATION. — The powers and duties of boards of education in cities are the same as those of boards of trustees in other school districts, and cannot trench upon the system that the legislature has provided for the entire state.

ID. — CITY OF SAN DIEGO — PUBLIC SCHOOL FUND — COUNTY TREASURY. — The city of San Diego is a corporation distinct from the corporation known as the school district of the city of San Diego, and the rights and obligations of the school district corporation are to be determined by the provisions of the Political Code, and not by those of the charter of the city of San Diego; and a provision of its charter, that all moneys belonging to the school fund of the city shall be deposited with the city treasurer does not supersede the requirements of the Political Code that all moneys pertaining to the public school fund shall be paid into the county treasury.

APPEAL from a judgment of the Superior Court of San Diego County.

The facts are stated in the opinion of the court.

*William H. Fuller*, for Appellant.

*W. J. Mossholder, Parrish, Mossholder & Lewis, Johnstone Jones*, and *J. E. Deakin*, for Respondents.

HARRISON, J.—The charter of the city of San Diego was framed by a board of freeholders chosen therefor, and, having been adopted by the electors of the city and approved by both houses of the legislature (Stats. 1889, p. 643), went into effect on the first Monday of May, 1889. Article 7 of the charter is entitled "Educational Department," and provides for a board of education with certain designated powers and duties. Section 6 of this article provides for a public school fund of the city, to consist of "all moneys received from the city, county, and state school funds, of all moneys arising from taxes which shall be levied by the common council for school purposes," and certain other moneys; and further provides that "all moneys of this fund shall be deposited with the city treasurer, and the same shall be drawn only by warrant, signed by the president and clerk of the board and duly audited by the auditor."

Section 16 requires that the board of education " shall report to the common council before the annual tax levy be made the amount necessary to carry on the public schools for the next school year, and thereupon the common council shall levy a rate of tax for school purposes, . . . . and such tax shall be in addition to all other amounts levied for city purposes." The plaintiff herein is the city treasurer of the city of San Diego, and alleges that certain moneys in the custody of the county treasurer have been apportioned by the county superintendent of schools to the school district of the city of San Diego, a portion of which were derived from the public school fund and a portion from a tax upon the taxable property of the city of San Diego levied by the board of supervisors in pursuance of an estimate made by the city board of education; and he seeks by this proceeding to compel the defendants, as auditor and treasurer of the county of San Diego, to deposit these moneys with him, as the treasurer of the city of San Diego.

Article IX. of the constitution makes education and the management and control of the public schools a matter of state care and supervision. The election of a state superintendent of public instruction, and of a county superintendent of schools for each county, is therein authorized, and a public fund for the support of schools is provided, which, it is declared in section 4, " shall be inviolably appropriated to the support of common schools throughout the state "; and in section 6, that the revenue from this fund, as well as from the state school tax, " shall be applied exclusively to the support of primary and grammar schools"; and, in section 8, it is further declared that no public money " shall ever be appropriated for the support of any . . . . school not under the exclusive control of the officers of the public schools." The legislature is directed, in section 5, to provide for " a system of common schools," and section 6 declares that " the public school system shall include primary and grammar schools, and such" other (of cer-

tain designated) "schools as may be established by the legislature or by municipal or district authority."

The term "system" itself imports a unity of purpose as well as an entirety of operation, and the direction to the legislature to provide "a" system of common schools means *one* system which shall be applicable to all the common schools within the state. In pursuance of this direction, the legislature has enacted chapter III. of title III., part III., of the Political Code, wherein the system outlined in the constitution is amplified, and provision made for the organization of school districts, and the election of the officers thereof, as well as of the officers authorized by the constitution, and defining their powers and duties, and also providing for the proper application of the revenue from the state school fund, and for the raising of additional money by taxation for the support of the common schools.

Section 1576 of the Political Code declares that "each county, city, or incorporated town, unless subdivided by the legislative authority thereof, forms a school district." By virtue of this legislative authority, each school district becomes a public corporation (*Estate of Bulmer*, 59 Cal. 131; *Hughes* v. *Ewing*, 93 Cal. 414), and its functions and powers as such corporation are those which are given to it by the act under which it is created. The legislative declaration that every incorporated city is a school district does not import into the organization of the school district any of the provisions of the city charter, or limit the powers and functions which, as a school district, it has by virtue of the Political Code. The city is a corporation distinct from that of the school district, even though both are designated by the same name, and embrace the same territory. The one derives its authority directly from the legislature, through the general law providing for the establishment of schools throughout the state, while the authority of the other is found in the charter under which it is organized; and even though the charter may purport to define the powers and duties of its municipal

officers in reference to the public schools in the same language as has the legislature in the Political Code, yet these powers and duties are referable to the legislative authority, and not to the charter.

The constitution and laws of this state recognize three classes of cities: those which are organized under the provisions of the general law authorizing municipal incorporations; those whose charters have been framed by a board of freeholders, chosen for that purpose by the city itself; and those which were organized prior to the adoption of the constitution, but have not chosen to change their form of organization. The legislature is, by the constitution, not only prohibited from creating a municipal corporation by special law, but it has also been prohibited from passing any local or special laws with reference to the powers or duties of municipal officers, or of any matter relating to municipal government. In all matters, however, which may affect the state at large, or whenever any legislation is, in its judgment, appropriate for all parts of the state, it possesses all the legislative power of the state that has not been specifically denied to it, and upon whatever subjects its power to pass a general law exists, such general law must be the controlling rule of action in all parts of the state, and over all its citizens. The constitution does not purport of itself to affect the organization of any city which had been previously incorporated, or to give to the legislature any power to affect its organization, except with its consent; but it gives to the legislature the right to pass general laws which shall be applicable to all cities within the state, by declaring (art. XI., sec. 6) that " cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws."

Section 1616 of the Political Code declares that " boards of education are elected in cities under the provisions of the laws governing such cities, and their powers and duties are as prescribed in such laws, except as

otherwise in this chapter provided"; and in the Municipal Government Act provision has been made for boards of education in cities that may be organized under that act. By the expression, "the laws governing such cities," is meant the charter of the city, or the power under which the city acts and exercises its authority, whether such power be such as was originally conferred by special charter prior to the adoption of the present constitution, or such as has been conferred by the general law providing for the organization of cities and accepted by the city; or such as is embraced in a charter framed by freeholders of its own selection, and ratified by the legislature. The "boards of education" thus provided for in cities is but another term for the "boards of trustees" to which the control of school districts has been given; and by section 1617 the same powers are conferred upon each, except in certain enumerated instances. It is unnecessary to determine whether it is competent for the legislature to delegate to these boards of education any of the powers which the constitution has authorized it to exercise in providing for a system of common schools, as the rights of neither party herein depend upon the exercise of such power; but conceding that by virtue of this section of the Political Code the charter under which a city is organized may prescribe the powers and duties of a board of education, yet the "powers and duties" authorized by section 1616 are powers and duties of the same general character as those which are enumerated in section 1617, and which, except in certain enumerated particulars, are conferred alike upon boards of education and boards of trustees. The powers and duties of the board of education in a city cannot trench upon the system that the legislature has provided for the entire state, since the charter is limited in its operation by any general law that may be passed by the legislature, and, in addition thereto, such powers and duties are, by the terms of the section in which they are authorized to be given, limited by the provisions of the Political Code. One of these is found in the second sub-

division of section 1617, by which it is made the duty, not only of the trustees of school districts, but also of boards of education in cities, " to pay all moneys collected by them from any source whatever for school purposes into the county treasury, to be placed to the credit of the special fund of their district."

These powers and duties relate to the management and control of the schöols for the purposes of education, and do not pertain to the custody or disbursement of the school moneys. Section 1532 of the Political Code requires the state superintendent of public instruction to apportion the school money to the several counties, and when he has so apportioned it, to draw his order on the controller " in favor of each county treasurer " for the moneys appropriated to that county; and section 1543 requires the county superintendent of schools to apportion the school moneys of the county to each school district within the county, and, on the order of the board of trustees or board of education, " to draw his requisition upon the county auditor for all necessary expenses against the school fund of any city, town, or district," and " upon receipt of such requisition the auditor shall draw his warrant upon the county treasurer in favor of the parties, and for the amounts stated in such requisition." The money is to remain with the county treasurer until it is paid out by him upon the receipt of such requisition. The school moneys never lose their character of public moneys belonging to the state, and are to remain under the control of its officers for the purposes for which they have been appropriated. The fact that they have been apportioned to the several school districts does not give to those districts any proprietary right therein, or any right to their custody; but the districts, through their authorized agents, have the right merely to contract for their proper disbursement within the purposes authorized by law. If any portion of the moneys thus apportioned is not used during the school year, it is made by section 1621 the duty of the county superintendent to reapportion the balance as other moneys are apportioned.

Section 1617 makes it the duty of the boards of education in cities to pay all moneys collected by them from any source whatever for school purposes into the county treasury. As these boards do not collect the money which the superintendent apportions to the district, this provision must have reference to other moneys; but as it requires them to pay all moneys collected from any source into the county treasury, it is corroborative of the proposition that as a school district the city is not an independent organization, but is correlated to the other school districts in the county, as a part of the system of public schools provided for by the legislature. For the purpose of raising money additional to that provided for from the state school fund, section 1817 directs the county superintendent to furnish to the supervisors each year an estimate of the amount needed for the ensuing year, and section 1818 requires the supervisors of each county having less than one hundred thousand inhabitants to levy a tax known as the "county school tax," which, as all other county school taxes, must, by section 3714, be at a uniform rate upon all taxable property within the county; and by section 1820 must be paid into the county treasury. For certain special purposes the supervisors are authorized to levy an additional tax within a school district, if the district has voted therefor, but, with this exception, the school tax must be uniform throughout the county. A board of education within a city has only the same right to make a requisition upon the board of supervisors to levy a tax for school purposes upon the taxable property within the city that has the board of trustees within any other school district in the county; and with the exception of a tax authorized by a vote of the district under the provisions of sections 1830–1837 of the Political Code for the expenditure of certain moneys within that district, the supervisors are not authorized to levy any tax for school purposes that shall not be uniform upon all the taxable property within the county. Section 1837 requires that this money, when collected, shall be paid into the

county treasury for the use of the district in which the tax was voted, and there is no provision of law authorizing the county treasurer to pay out any of the moneys held by him for the account or to the credit of a school district, except in the manner provided by section 1543.

The provision, in the charter of the city of San Diego, that all moneys belonging to the school fund of the city shall be deposited with the city treasurer, cannot, as we have seen, supersede the requirements of the Political Code that all moneys pertaining to the public school system shall be paid into the county treasury. Aside from the fact that this provision in the charter purports in terms to apply only to those taxes levied by the common council, and not to those levied by the board of supervisors, a consideration of the functions of the city government relative to the county government will show that the provisions of the charter cannot have the effect contended for by the appellant. The constitution has authorized the city to frame this charter " for its own government," and this limitation implies that its authority is restricted to its own officers and the inhabitants within its territory, and that it cannot extend the authority of its officers to matters outside of its territory, or to subjects that have been placed by the constitution exclusively within the control of the legislature, or that have been confided by the legislature to the management of other officials. The county treasurer and the county auditor are elected by the county at large, and constitute a portion of the political government of the state, with duties and powers prescribed by the legislature, and in their official positions act for the welfare of the state; but if it should be held that the inhabitants of a city can, by means of a charter framed by themselves, prescribe the powers and duties of these officers, the charter of that city would cease to be a charter " for its own government," and we might have the spectacle of different cities within the same county prescribing different, and perhaps contradictory, duties for officers who had not been chosen by them, but had been elected by

different constituencies under the general law of the state, and who were accountable for their acts to the citizens by whom they had been elected.

We hold, therefore, that the appellant is not entitled to the custody of the moneys referred to in his petition, and the judgment of the superior court is affirmed.

PATERSON, J., and GAROUTTE, J., concurred.