[Civ. No. 691.   First Appellate District.—December 27, 1909.]

MARGARET MAHONEY, Appellant, v. BOARD OF EDU-
CATION OF THE CITY AND COUNTY OF SAN
FRANCISCO, et al., as Members of said Board, etc., Re-
spondents.

DEDICATION OF LAND FOR SPECIFIC PURPOSE—USE FOR OTHER PURPOSE—
CONSENT ESSENTIAL.—When land has been dedicated to a definite
and specific purpose, the property cannot, without the consent of
the grantor or devisor, or his successor in interest, be used for
any other purpose.

ID.—DEDICATION OF LAND BY STATE IN MUNICIPALITY—POWER OF
MUNICIPALITY AND OF STATE.—When the state has dedicated land
in a municipality for specified purposes, although the municipality
has no power to divert the property from such purposes, yet the
right of the state to do so, on the other hand, is unlimited, unless
there are contract restrictions, or private rights involved.

ID.—DEDICATION OF SCHOOL LANDS IN SAN FRANCISCO—FREEHOLDERS'
CHARTER—LEASE OF LAND NOT NEEDED FOR SCHOOL PURPOSES.—
Where the state dedicated land in San Francisco for school pur-
poses, it had power to authorize the city board of education therein
to lease such land when not needed for school purposes for a term
of years, and did confer such power by approving its freeholders'
charter pursuant to the constitution, conferring such power in
subdivision 11 of chapter III of article VII of such charter. A
lease made thereunder is as valid and effective as if the legislature,
on its own initiative, had authorized and directed the board of
education to execute it.

ID.—SCHOOL LAND A STATE AFFAIR—CONSTRUCTION OF POLITICAL CODE
—ABSENCE OF CONFLICT WITH CHARTER.—Although the school law
is a state, and not a municipal affair, yet there is nothing in
chapter III of title III of the Political Code, regulating public
schools, inconsistent with the charter defining the powers of the

board of education in San Francisco.  Section 1616 of the Political Code expressly provides that the powers and duties of boards of education elected in cities under the provisions of the laws governing such cities, are as prescribed in such laws, except as otherwise in such code provided.  There is nothing in section 1617 of that code conferring general powers upon boards of trustees of school districts, and upon boards of education in cities, nor in subdivision 20 thereof, inconsistent with section 1616 thereof, nor with the freeholders' charter of San Francisco.

ID.—CONSISTENT PROVISION IN POLITICAL CODE WITH CHARTER PROVISION—POWER TO RENT SCHOOL PROPERTY.—Subdivision fourth of section 1617 of the Political Code is consistent with the charter of San Francisco, in conferring general power upon boards of education in cities and upon trustees in school districts "to rent . . . school property."  This provision cannot be construed as conferring power to rent property for school purposes, since property so rented would not be school property.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Hiram W. Johnson, Austin Lewis, and R. M. Royce, for Appellant.

Percy V. Long, City Attorney, and Jesse H. Steinhart, Assistant City Attorney, for Respondents.

KERRIGAN, J.—This is an action brought to restrain the board of education of the city and county of San Francisco from leasing certain premises dedicated to public school purposes.  The property involved is on the southeasterly corner of Fifth and Market streets in San Francisco, and is known as the Lincoln school lot.  After some formal allegations the complaint alleges that said property was in the year 1858 vested in the commissioners of the funded debt of said city and county; that in said year an act of the legislature was passed and approved, authorizing and empowering that commission to convey said property to the board of education of said city and county in trust to and for the use of public schools in said city and county; that thereafter, the said commissioners did make, execute and deliver to said board of education, as trustee and in trust to and

for the use of such public schools, a conveyance and transfer of said property; that thereafter, by an ordinance of said city and county, known as the Van Ness ordinance, approved by an act of the legislature duly passed, the title to said property was confirmed in said board of education for the purpose of sites for schoolhouses, and thereafter the title of said board for said purposes was, by an act of Congress of the United States, again confirmed. That said board of education, as such trustee, has ever since held, and does now hold, the title to said real property for public school purposes, and as a site for schoolhouses, and for no other use or purpose whatsoever.

The complaint further alleges that the board of education, unless restrained, will lease that property for a term of thirty-five years to one Maurice Rosenthal, to be devoted to purposes foreign to those contemplated by the dedication; that the board of education is without power to devote said lands to any other use than that to which they were dedicated.

Then follows the prayer of the complaint.

Defendants demurred to the complaint, the demurrer was sustained without leave to amend, and judgment was rendered against plaintiff, from which judgment this appeal is prosecuted.

Plaintiff contends that to permit the defendants to lease this property as contemplated will be, as alleged in the complaint, to allow the property to be diverted from the purposes to which it was dedicated, and that this the board of education has no power to do.

When land has been dedicated to a definite and specific purpose by grant or devise it is well settled that the property cannot, without the consent of the grantor or devisor, or his successor in interest, be used for any other purpose. (2 Dillon on Municipal Corporations, sec. 650; *Harter* v. *San Jose,* 141 Cal. 659, [75 Pac. 344].)

It is also true that when dedicated land is situated within a municipality, but is set aside and reserved by the state for certain purposes, the municipality has no authority to divert the property from such purposes. But the right of the state to do so, on the other hand, is unlimited, unless there are contract restrictions or private rights of an abutting owner or other person involved.

This proposition is abundantly supported by the authorities. In the case of *Hart* v. *Burnett,* 15 Cal. 530, at page 581, the court found that the city and county of San Francisco held the title to the land which constituted the old pueblo of Yerba Buena as the successor of the Mexican pueblo, and in trust to and for the purposes for which it was dedicated by the Mexican law. The court at page 581 said: "We do not dispute the proposition that the legislature, perhaps without the consent of the city and county of San Francisco—certainly with it—could, by virtue of its paramount political sovereignty, change the trusts upon which those lands were held. It might undoubtedly authorize another and different mode of disposing of them and by other and different agents."

In *Polack* v. *San Francisco Orphan Asylum,* 48 Cal. 492, it was held that land dedicated for street purposes could be revoked by an act of the legislature. It was there said: "That the legislature possesses competent power to dedicate a street in a city; that the legislature may delegate or give such power to the municipal authorities in such city; that its exercise by the municipal authorities is dependent upon the will and subject to the control of the legislature; and that after such power has been thus given to municipal authorities, the legislature may revoke it in part as well as in whole, or without an express revocation may itself exercise it in any particular instance, are propositions about which there can be no controversy in this state."

In *City of Monterey* v. *Jacks,* 139 Cal. 542, [73 Pac. 436], 203 U. S. 560, [27 Sup. Ct. 67], the court held that the lands dedicated to the pueblo of Monterey for certain public uses were held by the city of Monterey as successor of the pueblo, subject to the same purposes. There certain lands dedicated for named public purposes were sold to an individual, which sale was approved, ratified and confirmed by an act of the legislature, and the court held the sale valid, and said that where land was not acquired by a municipality in its proprietary right the legislature had absolute power to alienate it, or when it had been sold to ratify such sale. In *Payne* v. *Treadwell,* 16 Cal. 233, the supreme court of this state said: "The agents of the corporation can sell and dispose of the property of the corporation only in the way

and according to the order of the legislature, and, therefore, the legislature may, by law operating immediately upon the subject, dispose of this property, or give effect to any previous disposition or attempted disposition of it. The property itself is a trust, and the legislature is the prime and original controlling power, managing and directing the use, disposition and direction of it.'' (See, also, *Brook* v. *Horton,* 68 Cal. 555, [10 Pac. 204]; *San Francisco* v. *Burr,* 108 Cal. 460, [41 Pac. 482]; *Merriwether* v. *Garrett,* 102 U. S. 472; 2 Dillon on Municipal Corporations, secs. 651, 652.) These authorities undoubtedly are to the effect that where lands are held by a city, board, commission, or other entity, in trust for the state, the legislature may revoke the dedication.

According to the allegations of the complaint, the land in question, by an act of the legislature, was held by the board of education in trust, to and for the use of public schools in San Francisco, and was subject, therefore, as we have just seen, to be diverted by the legislature from such purpose, and the leasing of the property by the board of education as proposed, it is conceded, would be a diversion of it from the use to which it was dedicated; but as it would be under a provision of the charter approved by the legislature, it would in effect be by the direction and under the authority of the legislature, and hence valid.

The board of education in this case was proceeding to act in accordance with subdivision 11 of section 1, chapter III of article VII of the charter of San Francisco, which reads: ''. . . The board of education shall have power: 11. To lease to the highest responsible bidder, for the benefit of the common school fund, for a term not exceeding thirty-five years, any real property of the school department not required for school purposes. . . .''

This subdivision of the chapter was approved by the legislature (Stats. Special Session 1907, p. 55). The board of education, therefore, was acting for the municipality and under the authority of the legislature. (*Ex parte Sparks,* 120 Cal. 395, 399, [52 Pac. 715].) The lease made under this permission of the charter is as effective as if the legislature, on its own initiative, had directed and authorized the board of education to execute the document.

But plaintiff claims that subdivision 11 of section 1, chapter III, article VII of the constitution above quoted, giving the board of education power to lease school property under certain conditions, is in conflict with chapter III of the Political Code, and hence unconstitutional.

The management and control of public schools is, under article IX of the constitution, a state and not a municipal affair (*Kennedy* v. *Miller*, 97 Cal. 429, [32 Pac. 558]); and under section 1616 of the Political Code the powers and duties of boards of education of cities are such as are prescribed by the law governing such cities, except as otherwise provided in chapter III of said code. The above-quoted subdivision of the charter of the city and county of San Francisco is the provision which authorizes and empowers the board of education to lease real property belonging to the school department under the circumstances therein stated. Is this subdivision in conflict with subdivision 20 of section 1617 of chapter III of the Political Code? That section provides that the "board of trustees may, upon a petition signed by the majority of the heads of families resident in the district . . . call a meeting of the qualified electors of the district" for certain purposes; that a meeting so called shall be competent to instruct the board of trustees in three specified matters, none of which has anything to do with the leasing of school property. They are: (1) In regard to location of *schoolhouses* or the use of the *same* for other than school uses; (2) In regard to the sale or purchase of a school site; (3) In regard to litigation. Moreover, section 1617, contrary to plaintiff's contention, seems to be in harmony with the subdivision of the charter in question, for subdivision 4 thereof empowers the board "to rent . . . school property." This does not mean to rent property for use of schools, because such property would not be school property.

The judgment is affirmed.

Hall, J., and Cooper, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 24, 1910.