[Civ. No. 3231.   Third Appellate District.—December 2, 1926.]

WILLIAM FAWCETT, Petitioner, v. E. S. BALL, as Treasurer, etc., Respondent.

[1] SCHOOL LAW — TRANSFER OF FUNDS — CONSTITUTIONAL LAW.—The provision of section 1858 of the Political Code, authorizing the transfer of funds to the proper school fund, under the conditions in said section set forth, and providing for the retransfer of such funds from the first money paid into the school fund, is not the lending or giving of "the credit of the state, or of any county . . . or other political corporation or subdivision of the State," within the meaning of those terms as used in article IV, section 31, of the state constitution; neither is said code section violative of article IV, section 25, of the constitution, forbidding the passage of local or special laws where a general law can

be made applicable, nor of article I, section 11, providing that "all laws of a general nature shall have a uniform operation."

[2] ID.—CHARACTERISTICS OF SCHOOL DISTRICTS—REASONABLE DISCRIMINATION.—The maintenance of public schools is a purely governmental function, and, as the expenses thereof are usually quite evenly distributed over a period of from eight to ten months of the year, those for the first three or four months of each fiscal year becoming due before any moneys are available for tax purposes, and the amounts to be received from county taxes and from the state are certain and readily ascertainable, whereas cemetery districts, reclamation districts, and other similar districts partake more or less of the nature of private enterprises, and their expenditures are not usually so evenly distributed throughout the year, while the amounts to be received by them are much more uncertain, section 1858 of the Political Code is not special and discriminatory because no similar provision is made for the transfer of funds in connection with cemetery, reclamation, and other similar districts.

[3] ID.—CUSTODY OF SCHOOL FUNDS—CONTRACTUAL RELATION—IMPAIRMENT OF OBLIGATION — CONSTITUTIONAL LAW. — There is no contractual relation between the county treasurer and the school districts of the county, but he holds the school moneys in his custody in obedience to the mandate of the law; and there is no merit in the contention that section 1858 of the Political Code is repugnant to section 16, article I, of the constitution, in that it impairs the obligation of a continuing contract existing as a matter of law between the treasurer's office and all the various districts whose funds are deposited in the county treasury.

[4] ID.—TEMPORARY TRANSFER OF FUNDS—ABSENCE OF DIVERSION.—To make a temporary transfer of school funds from one fund to another, or from one district to another, is not to divert such moneys from the purposes for which they were provided, where such fund or district to which the transfer is made has an assured income.

[5] ID.—PREFERENTIAL RIGHT TO TRANSFER — MANDAMUS—INSUFFICIENT PLEADING.—No school district has a preferential right to a transfer of moneys from the limited funds available as against other districts equally in need of money; and, therefore, where the petition for a writ of mandate to compel the county treasurer to make a transfer of funds, as authorized by section 1858 of the Political Code, shows that a certain high school district is indebted to petitioner and has not sufficient funds to meet such indebtedness, but neither the petition nor the evidence shows the needs of other districts, or even of the district in question, except as to the amount due petitioner, and the contents of the county superintendent's estimate are not shown, except as the

same relates to the district in question, it cannot be determined what part of the alleged available moneys may be transferred to that district, and the writ must be denied.

---

(1) 35 Cyc., p. 976, n. 39 New; 36 Cyc., p. 1010, n. 50. (2) 12 C. J., p. 891, n. 77; 35 Cyc., p. 819, n. 70 New; 36 Cyc., p. 992, n. 91. (3) 12 C. J., p. 1014, n. 76 New; 15 C. J., p. 511, n. 32 New; 35 Cyc., p. 824, n. 5 New, p. 833, n. 87 New, p. 923, n. 4. (4) 35 Cyc., p. 825, n. 14 New. (5) 35 Cyc., p. 822, n. 3

PROCEEDING in Mandamus to compel a county treasurer to transfer funds to the credit of a school district. Petition denied and writ discharged.

The facts are stated in the opinion of the court.

George R. Freeman for Petitioner.

R. M. Rankin and Duard F. Geis for Respondent.

THE COURT.—This is an original application for a writ of mandate.

The petition alleges that the Orland Joint Union High School District is indebted to petitioner in the sum of $250 for services as a teacher therein during the months of September and October, 1926; that said district has not sufficient money to its credit in the county treasury to pay such indebtedness; that on the 10th of September, 1926, the county superintendent of schools gave respondent County Treasurer "an estimate of the amount of the school money that would then next be paid into said county treasury, stating the amounts to be apportioned to each school district in the county including said Orland Joint Union High School District and that a copy of said estimate, so far as it relates to said Orland Joint Union High School District is hereunto annexed and marked exhibit 'A' and made a part thereof"; that there was then and is now standing to the credit in the county treasury of certain named school districts and certain designated school funds specified amounts aggregating $6,922.60 "not immediately needed to pay any claims against the same respectively"; that the respondent refuses "to transfer to said Orland Joint Union High School District any of the funds referred to . . . or any part of such funds." The ex-

hibit attached to the petition shows only such parts of the estimate of the county superintendent of schools as relate to the Orland Joint Union High School. The prayer is for a writ of mandate requiring the respondent "to transfer to said Orland Joint Union High School District from any of the funds referred to, . . . not immediately needed to pay the claims against them respectively, and not heretofore transferred to any other school fund, an amount sufficient to pay the claim and demand of petitioner, but so that said amount shall not exceed 90% of the amount estimated by the superintendent of schools that will next be paid into the treasury of said county to the credit of said Orland Joint Union High School District." The respondent demurred to the petition on general and special grounds and filed an answer thereto. From the evidence introduced at the hearing it appears that the allegations of the petition are true. Neither the petition nor the evidence, however, shows the estimated amounts to be received by other school districts in the county or whether they also are without sufficient money to pay the demands against them. Section 1858 of the Political Code provides:

"Whenever in any school year, prior to the receipt by the school districts of any county, or city and county of this state, of their state, county, or city and county, or special or high school fund, the school districts of that county, or city and county shall not have sufficient money to their credit to pay the lawful demands against them, the county or city and county superintendent shall give the treasurer of said county or city and county, an estimate of the amount of school money that will next be paid into the county or city and county treasury, stating the amount to be appropriated to each district. Upon the receipt of such estimate it shall be the duty of the treasurer of said county, or city and county, to transfer from any fund not immediately needed to pay the claims against it, to the proper school fund an amount not to exceed ninety per cent of the amount estimated by the superintendent, and he shall immediately notify the superintendent of the amount so transferred. The funds so transferred to the school fund shall be retransferred by the treasurer to the fund from which they were taken, from the first money paid into the school fund after the transfer."

[1]  Respondent contends that such provision for a trans-
fer of funds is violative of the constitutional limitations
hereinafter considered.  It is clear that such a transfer is
not the lending or giving of "the credit of the state, or of
any county, . . . or other political corporation or subdivi-
sion of the state," within the meaning of those terms as used
in article IV, section 31, of the constitution.  (*Veterans'
Welfare Board* v. *Riley*, 188 Cal. 607, 616 [206 Pac. 631].)
Neither is the section violative of article IV, section 25, for-
bidding the passage of local or special laws where a general
law can be made applicable, nor of article I, section 11,
providing that "all laws of a general nature shall have a
uniform operation."  [2]  Respondent contends that the
section is special and discriminatory because no similar pro-
vision is made for levy districts, "cemetery districts,
reclamation districts, and many others."  "A law is general
and uniform in its operation when it applies equally to all
persons embraced within the class to which it is addressed,
provided such class is made upon some natural, intrinsic, or
constitutional distinction between the persons composing it
and others not embraced in it."  (*Matter of Application of
Miller*, 162 Cal. 687, 698 [124 Pac. 427, 430].)  There are
marked distinctions between school districts and other dis-
tricts of the character of those named by respondent.  The
maintenance of public schools is a purely governmental func-
tion.  The expenses thereof are usually quite evenly dis-
tributed over a period of from eight to ten months of the
year, those for the first three or four months of each fiscal
year becoming due before any moneys are available from taxes
collected during that year.  The amounts to be received from
county taxes and from the state are certain and readily
ascertainable, being fixed by article IX, section 6, of the
constitution.  The other districts referred to by respondent,
in their purposes and management, partake more or less
of the nature of private enterprises, their expenditures are
not usually so evenly distributed throughout the year as those
of school districts, and the amounts to be received by them
are much more uncertain.  "The legislative judgment as to
what is a sufficient distinction cannot be overthrown by
the courts, unless it is, beyond rational doubt, erroneous."
(*Matter of Application of Stephan*, 170 Cal. 48, 50 [Ann.
Cas. 1916E, 617, 148 Pac. 196].)

[3] Respondent contends that "the section is repugnant to section 16, article I, of the Constitution, in that it impairs the obligation of a continuing contract existing as a matter of law between the treasurer's office and all the various districts whose funds are deposited in the county treasury." There is no contractual relation between the county treasurer and the school districts of the county, but he holds the school moneys in his custody in obedience to the mandate of the law. "The school moneys never lose their character of public moneys belonging to the state. . . . The fact that they have been apportioned to the several school districts does not give to those districts any proprietary right therein. . . . If any portion of the moneys thus apportioned is not used during the school year, it is made by section 1621 the duty of the county superintendent to reapportion the balance as other moneys are apportioned." (*Kennedy* v. *Miller,* 97 Cal. 429, 435 [32 Pac. 558]; *Gridley School Dist.* v. *Stout,* 134 Cal. 592 [96 Pac. 785].) "The management of the public schools is a state affair, and school districts at most are but a state agency for that purpose." (*Board of Education* v. *Davidson,* 190 Cal. 162, 168 [210 Pac. 961].) They "are essentially nothing but trustees of the state, holding the property and devoting it to the uses which the state itself directs." (*Pass School Dist.* v. *Hollywood Dist.,* 156 Cal. 416, 419 [20 Ann. Cas. 87, 26 L. R. A. (N. S.) 485, 105 Pac. 122].) Subject only to constitutional limitations, "the power of the legislature over school districts is plenary." (*Worthington School Dist.* v. *Eureka School Dist.,* 173 Cal. 154, 156 [150 Pac. 437]; *MacMillan Co.* v. *Clarke,* 184 Cal. 491, 498 [17 A. L. R. 288, 194 Pac. 1030].)

Section 1543a of the Political Code provides that, whenever there is presented to the county superintendent of schools any claim or demand against a school district which has not sufficient money to pay the same, he shall indorse thereon the words, "not approved for want of funds," and that such demand shall thereafter bear interest at the rate of six per cent per annum until there are sufficient funds to the credit of the district to pay the amount thereof. In connection with what has been previously stated, it thus appears that a school district must annually carry over a surplus equal to from thirty to forty per cent of the amount of its yearly expenditures or pay interest for several months

on a like amount, unless the foregoing provisions of section
1858 can be upheld. Under like circumstances, no private
business would carry over an idle surplus of such magnitude
in one fund or pay interest on its indebtedness while it held
an equal amount in other funds not immediately needed to pay
demands against them. It would require cogent reasons to
justify a court in holding that the legislature is without
power to provide that the business of the state shall be
conducted upon business-like principles. [4] To make a
temporary transfer of school moneys from one fund to an-
other, or from one district to another, is not to divert such
moneys from the purposes for which they were provided.
As said by the supreme court of Washington in discussing
a similar question, "The word 'diverted' is used in the
sense of turning permanently from its purpose, the equiva-
lent of appropriation for some other use. A temporary
transfer from the general fund to another fund with an
assured income is not an appropriation or diversion. . . .
The city controls both funds, and it is under the legal obliga-
tion to see that the general fund is seasonably reimbursed
from the source of supply to the special one. Of course,
the city authorities must exercise common business sense in
making such transfer. . . . A city should not transfer its
general fund moneys as temporary loans to other funds that
have not assured and certain sources of income, the collection
of which is under the control of the city itself." (*Griffin* v.
*City of Tacoma,* 49 Wash. 524 [95 Pac. 1107].)

[5] The provisions of section 1858 quoted herein leave
much to be desired in the way of clearness and certainty.
There may be some doubt as to whether it was intended that
the treasurer should transfer to the general county school
fund an amount not exceeding ninety per cent of the total
amount of the estimated receipts of all the schools of the
county, such amount to be apportioned by the superin-
tendent to the several districts, or make the transfer directly
to the credit of the respective districts. Neither the peti-
tion nor the evidence shows the needs of districts other than
Orland Joint Union High School District, or even of that
district except as to the amount due petitioner, nor are the
contents of the county superintendent's estimate shown,
except as the same relate to the district named. It cannot be
determined, therefore, what part of the alleged available

moneys may be justly transferred to that district. No district has a preferential right to a transfer of money from the limited funds available as against other districts equally in need of money. If it was the respondent's duty, upon receipt of the superintendent's estimate, to make a transfer of moneys from the available funds to the account of one district, it was equally his duty to make a transfer to all that were in like need. Since the facts presented are insufficient to show the amount which it is the duty of respondent to transfer to the Orland Joint Union High School District, the relief prayed for by petitioner cannot be granted.

The petition is denied and the writ is discharged.