[Civ. No. 15351. Second Dist., Div. One. Jan. 20, 1947.]

WARREN W. BUTLER, Appellant, v. COMPTON JUNIOR COLLEGE DISTRICT OF LOS ANGELES COUNTY et al., Respondents.

720

Hanna & Morton and Roscoe R. Hess for Appellant.

Harold W. Kennedy, County Counsel, and Wm. E. Lamoreaux, Deputy County Counsel, for Respondents.

WHITE, J.—An action was brought by a taxpayer against Los Angeles City Junior College District, Compton Junior College District and the individual members of the governing board of the latter district, seeking an injunction and declaratory relief with respect to a contract between the two districts for the interchange of pupils. In substance, the purpose of the action was to enjoin the Compton District from charging the Los Angeles District less than what was averred to be the actual cost to the Compton District of educating the Los Angeles pupils involved in the interchange. From a judgment denying the relief sought, this appeal is prosecuted.

Section 1502 of the Education Code provides in part: "One school district may perform school services for another school district, and receive pay from the other school district for the performance of the school service, whenever a contract approved by the county superintendent of schools covering the performance of and the payment for school service has been entered into by and between the governing boards of the school districts concerned. . . ."

Section 1503 of the Education Code, so far as here pertinent, provides: "The governing board of any school district may

admit to the schools or classes maintained in the district any pupils who reside in another school district which maintains schools or classes of the grade level which the pupils desire to attend, whenever an agreement is entered into between the governing board and the governing board of the district of residence stipulating the terms upon which the interdistrict attendance shall be permitted, or, if the terms of a contract cannot be agreed upon, whenever the county board of education having jurisdiction over the district of residence gives written authorization permitting the interdistrict attendance on such terms as may be agreed upon by the county board of education and the governing board of the district of proposed attendance. . . ."

Disregarding provisions for the acceptance of pupils in certain special classes, the effect of the contract here under attack was that the Los Angeles District agreed to accept as pupils all eligible residents of the Compton District. Compton District agreed to accept as pupils all residents of the Los Angeles District who were in the 13th and 14th grades and who resided within certain described boundaries in the Los Angeles District. The contract further provided that the district educating the smaller number of nonresident pupils in average daily attendance should pay to the other district the sum of $35 for each such pupil in average daily attendance in excess of the number of such nonresident pupils educated by the first mentioned district. It was further agreed that "in accordance with section 1504 of the Education Code, the attendance of all pupils from the respective districts covered by this agreement shall be credited to the school district of attendance for apportionment purposes" and that no payment should be made for services rendered to pupils attending the special classes not here under consideration. The phrase "apportionment purposes" refers to the sum of $90 per unit of average daily attendance paid by the state to each junior college from the state junior college fund (Ed. Code, § 5453).

It was charged in the complaint "that the performance of said contract of August 17, 1944, and said modification of November 27, 1944, results in a loss to the Compton District in the amount of the difference between the total sum of $90.00 received from the State Junior College Fund pursuant to Section 5453 of the Education Code, plus the said $35.00 receivable from the Los Angeles District, to-wit, the total sum of $125.00, and the total cost to the Compton District for the

current expenses per pupil educated in the Junior College in said Compton District pursuant to the terms of said contract, in the approximate sum of $253.87, or a loss per pupil for each of said 227 pupils (Average Daily Attendance) of approximately $128.87 per pupil or a total loss to said Compton District for the year 1944-45 reasonably calculable in the sum of 227 times $128.87 or $29,253.00.'' It was further averred that this loss was ''reasonably calculable and foreseeable''; that for the past ten years, under similar contracts, the excess of Los Angeles pupils in the Compton school over the Compton pupils in the Los Angeles school has never been less than 200 and on several occasions exceeded 400. The complaint further charged that in the execution of these contracts and the particular contract in question, it was the intention of the districts involved that Compton should receive a sum per unit of average daily attendance less than the total current expense per pupil shown by the reports of the County Superintendent of Schools for the preceding year and also less than the total current expense reasonably to be anticipated.

It was also alleged that although there was no accurate method of fixing the cost to Compton of the amount reasonably chargeable for the use of buildings and equipment for the education of the Los Angeles pupils under the contract, the ''Legislature of the State of California has given recognition to the existence of such cost, and to the reasonable amount thereof in the sum of $65.00 per unit of average daily attendance, by the adoption of section 5476 of the Education Code.''

Plaintiff charged that the performance of the contract constituted a transaction by which there resulted a gift to the Los Angeles District of public money belonging to the Compton District, money raised by taxation within the Compton District, in violation of section 31, article IV, of the Constitution of California; that the contract was not a fair and reasonable exercise of the discretion vested in the authorities, but an abuse thereof. Plaintiff sought also an injunction against the making of a similar contract for the fiscal year 1945-46 and also prayed for declaratory relief.

The trial court found that the excess of Los Angeles residents attending Compton over the Compton residents attending Los Angeles during the school year 1944-45 (average daily attendance) was 234.04; that ''according to Exhibit ''F'' in the stipulation of facts the current expenditure per unit of average daily attendance in the 13th and 14th grades in the

regular day school of the Compton Junior College District for the school year 1943-44 after deducting $90 per unit of average daily attendance received from state apportionment was the sum of $231.74.'' The Exhibit ''F'' referred to is a ''Certificate of Attendance and Cost of Nonresident Junior College Pupils'' attending Compton, which certificate was filed by the Compton authorities with the County Superintendent of Schools pursuant to section 5476 of the Education Code, for the purpose of securing reimbursement for the cost of educating non-resident pupils residing in Los Angeles County but not within any junior college district.

The pertinent information appearing on the certificate may be summarized as follows:

1. Total current expenditures for classes above 12th grade .................... $165,465.91
2. Total state apportionment ($90 per pupil)    64,747.93

3. Total current expenditures less state apportionment ....................... 100,717.98
4. Total average daily attendance above 12th grade ............................ 434.62
5. Tuition chargeable per unit of average daily attendance (Item 3 divided by Item 4) ............................... 231.74

(In addition to the charge of $231.74 per pupil, the district also receives, under authority of Ed. Code, § 5476, the sum of $65 per pupil for use of buildings and equipment.)

It was stipulated, among other things, that the report of the Los Angeles County Superintendent of Schools for the school year 1943-44 contained the following data with respect to the current expense per pupil of the respective districts::

|  | Compton | Los Angeles |
|---|---|---|
| Average Daily Attendance....... | 2,162 | 2,043 |
| Instructional Expense ........ | $320,715.54 | $611,665.81 |
| Instructional Expense per pupil .................. | 148.34 | 299.40 |
| Other Current Expense........ | 228,149.36 | 465,132.35 |
| Other Current Expense per pupil .................. | 105.53 | 227.67 |
| Total Current Expense........ | 548,864.90 | 1,076,798.16 |
| Total Current Expense per pupil .................. | 253.87 | 527.07 |

It was further stipulated, however, that as to Compton the above figures include an average daily attendance of 143 in Army Specialized Training Classes and expenditures therefor, but as to Los Angeles the figures do not include an average daily attendance of 605 in Army programs, although the expenditures therefor are included in the expenditures above set forth. Omitting both attendance and expenditures, so far as the Army program was concerned, the total current expense per pupil for Compton was $230.55 and for Los Angeles $288.73. It also appears that of the 2,162 pupils attending Compton in the year under consideration, 1,511 were of the 11th and 12th grades, i. e., in high school classes, and 651 in the regular junior college grades.

The trial court further found that the contract in question and the contemplated contract for the following year did not amount to the making of a gift in violation of section 31 of article IV of the California Constitution, and that the respective governing boards did not abuse the discretion vested in them by entering into such contracts.

On this appeal appellant presents five points: (1) That section 1502 of the Education Code is a general law that is not uniform in its operation if it permits a tax levied in one district to be used for the benefit of students of other districts; (2) that the "arbitrary price" fixed in the contract results in a gift of public funds by the Compton District in violation of section 31 of article IV of the Constitution; (3) that the contract constitutes an abuse of discretion by the Compton District board; (4) that the findings are not supported by the evidence as to abuse of discretion; (5) that the court failed to find upon the material allegation that the "loss" for the year 1944-45 was readily foreseeable and calculable.

From the facts above set forth it is clear that the foundation of the taxpayer's case is his contention that the Compton District has undertaken to educate Los Angeles pupils at a loss—in other words, that the Compton board has made an improvident contract. The only evidence produced in support of this assertion is the certificate, Exhibit "F" above referred to, similar certificates for previous school years, and the data above set forth from the stipulation of facts. It is argued by appellant that "under the Education Code, sections 5476 to 5484, the Superintendent of Schools of the County in which there is not a County Junior College must certify to the Board of Supervisors the total cost of education during the

next preceding school year, of all junior college pupils residing in the county and not residing in any junior college district. . . .'' The certificate of the County Superintendent, which is also sworn to by an official of the junior college district involved, constitutes, appellant urges, ''not only a report, but it is the *claim* of the Compton District, sworn to, for reimbursement of the cost *to* the Compton District of these nonresident pupils.'' It follows, according to appellant's view, that the cost per pupil set forth in the certificate is the criterion by which to judge the contract here in question. With this contention we cannot agree.

No method has been prescribed in the Education Code by which to determine the ''cost'' per pupil. As appears from Exhibit ''F'' hereinbefore referred to, the cost is computed, so far as pupils residing outside a junior college district are concerned, simply by dividing the total expenses for the year by the number of pupils (average daily attendance). This resulting figure is merely the average cost per pupil for the number of pupils educated, and has little significance in determining the question here presented. As pointed out by respondent, the average expenditure per pupil is not necessarily the same as the cost to Compton District of educating the *additional* pupils here involved. There is no evidence to show what the total cost of operating the Compton Junior College District would have been if the additional Los Angeles pupils had not been in attendance. The extra cost of educating the Los Angeles pupils presented an administrative problem involving a consideration of such matters as the additional expense for instructors, additional equipment, the capacity of the buildings and equipment already on hand, the fixed charges which would remain the same whether the extra pupils were accepted or not, and other factors as to which no evidence was offered.

The reports made by the Compton District to the County Superintendent of Schools, of which Exhibit ''F'' relied upon by appellant is an example, are required by law to cover a particular situation, the education of pupils not residing within the boundaries of any junior college district, and are for the purpose of ascertaining the amount of the tax levy upon property without any district and its distribution to districts which educate the pupils from without such districts. The question of the amount which should be received from

these areas outside of any district, which areas in the absence of the provisions of sections 5476 to 5484 of the Education Code would bear none of the cost of maintaining the college that is borne by the property within the district, has little, if any, bearing upon a contract between contiguous districts, the propriety or wisdom of which may depend upon a number of factors peculiar to the districts involved.

Nothing in the sections of the Education Code hereinbefore referred to requires any district to enter into such a contract as that here under consideration should its governing board deem it inadvisable. Conceivably, should the Compton District insist upon a higher rate of compensation for educating Los Angeles pupils, the Los Angeles District might refuse to enter into a contract at all, in which event the Compton District and its taxpayers would lose the sum of approximately $29,250 ($35 per pupil from Los Angeles and $90 per pupil from the state) during the school year 1944-1945.

As pointed out in the opinion rendered by the trial judge, "where discriminatory functions are lodged by law in a public body, a court of equity does not have power to determine the wisdom of a contract nor to interfere with the exercise of such functions in the absence of a showing of want of jurisdiction, or of fraud corruption, or bad faith, or the existence of some other fact sufficient to vitiate the contract." (*In re City and County of San Francisco*, 191 Cal. 172, 185 [215 P. 549]; *Nickerson* v. *County of San Bernardino*, 179 Cal. 518, 522 [177 P. 465]; *Skidmore* v. *West*, 186 Cal. 212, 220 [199 P. 497]; *Potter* v. *City of Compton*, 15 Cal.App.2d 232, 235 [59 P.2d 537].)

In *Fillmore Union High School Dist.* v. *Cobb*, 5 Cal.2d 26, 32 [53 P.2d 349], the Supreme Court, adopting the opinion of the District Court of Appeal for the Third Appellate District, said, with respect to the discretion involved in a similar situation:

"It would be impracticable for the legislature to attempt to specifically prescribe all the terms and rules under which pupils may be permitted to attend high schools outside the particular district in which they reside since the equity of such terms may depend upon peculiar local conditions. It would therefore seem to be wise and proper that the adoption of such terms within the general scope prescribed by the statute be delegated to the interested school boards or to the superintendent of schools. It necessarily follows that such delegated

discretionary authority should be exercised by the board or administrative officer in a fair and reasonable manner. The terms which are adopted are presumed to be reasonable, in the absence of proof to the contrary. . . ."

In *Berkeley High School Dist.* v. *Coit*, 7 Cal.2d 132 [59 P.2d 992], in a proceeding to compel the countersigning of tax anticipation notes authorized by the governing board of the district pursuant to statutory authority, the court said (p. 136) : "The resolutions and requests shown in the petition herein, and which it is admitted were duly adopted and made, are presumptive evidence of the facts therein declared. It is presumed that official duty has been regularly performed. . . . The choice is between the issuance of interest-bearing treasury warrants, or the saving of interest charges by making these short-time loans. The decision thereon is a matter of discretion in the administration of ordinary public business. . . . Where the act of a local or subordinate legislative body is not only legislative but also is discretionary in the required exercise of judgment, concerning a matter committed to its care, the courts 'cannot enter the board room . . . nor interfere at all with its action unless the board is exceeding its legislative powers, or its judgment or discretion is being fraudulently or corruptly exercised.' (*Nickerson* v. *San Bernardino County*, 179 Cal. 518 [177 P. 465].)"

While it is contended that the Compton District board was guilty of an "abuse of discretion," the record does not contain any intimation that the governing boards of either of the contracting districts acted from any motive of fraud or bad faith. As heretofore pointed out, the Legislature has seen fit to delegate to the interested school boards the right to negotiate and agree upon terms and rules under which pupils may be permitted to attend schools in a district outside of the particular district in which they reside. This, as pointed out, because the equity and wisdom of such terms may depend upon peculiar local conditions. We have heretofore adverted to certain conditions that might well have been present in the contract now before us that justify the wisdom of the Compton District board in entering into the contracts in question. That such, or other, local conditions were not present does not appear from the evidence. The courts, therefore, cannot interfere with the exercise of the discretion vested in the governing board of the school district unless such action is unreasonable, unfair, or tainted with fraud, corruption or bad faith. As to

the reasonableness and fairness of the board's action, it may be said that the terms of the contract agreed upon are presumed to be reasonable and fair in the absence of proof to the contrary. (*Fillmore Union High School Dist.* v. *Cobb, supra,* p. 32.) Having in mind the discretion with which the school board was clothed in the administration of ordinary public business committed to its care, we find in the record before us none of the elements which would justify judicial interference with the action taken.

Concerning appellant's claim that the contract entered into in 1944 and that contemplated in 1945 amount to the making of a gift of public moneys in violation of the provisions of section 31 of article IV of the Constitution, we have concluded that the decision thereon reached by the learned trial judge correctly disposes of that issue. We therefore adopt as part of our opinion herein the following language taken from the opinion prepared by the trial judge, Honorable Emmet H. Wilson, when this cause was pending before him:

"Section 31 of article IV of the Constitution provides that the Legislature shall not have power 'to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever.' This provision does not prevent a city from issuing bonds for the acquisition of land to be donated to the state, the latter not being a corporation. (*City of Sacramento* v. *Adams,* 171 Cal. 458, 462 [153 P. 908].) A school district is not a municipal corporation. (*People* v. *Rinner,* 52 Cal.App. 747, 751 [199 P. 1066].) It is a political division of a county (Id. at p. 752) and a county is not a municipal corporation. (*People* v. *McFadden,* 81 Cal. 489, 497 [22 P. 851, 15 Am.St.Rep. 66]; *County of San Mateo* v. *Coburn,* 130 Cal. 631, 636 [63 P. 78, 621].) A municipal corporation is created only with the consent of its inhabitants, but a school district is an involuntary political division of the' state, created by or under the authority of general laws. (*Skelly* v. *Westminster School Dist.,* 103 Cal. 652, 658 [37 P. 643].) A school district is an agency of the state (*Board of Education* v. *Davidson,* 190 Cal. 162, 168 [210 P. 961]; *Skelly* v. *Westminster School Dist., supra; Fawcett* v. *Ball,* 80 Cal. App. 131, 136 [251 P. 679]); the school system is a matter of general state concern and is not a municipal affair. (*Kennedy* v. *Miller,* 97 Cal. 429, 431 [32 P. 558]; *Hancock* v. *Board of Education,* 140 Cal. 554, 561 [74 P. 44]; *Malaley* v. *City of*

*Marysville,* 37 Cal.App. 638, 642 [174 P. 367].) ▮ The beneficial ownership of the fee title to school district property is in the state and the district holds legal title as trustee. The transfer of the legal title from one school district to another is merely a transfer under the same trust from one trustee to another. (*Pass School District* v. *Hollywood City School District,* 156 Cal. 416, 419 [105 P. 122, 20 Ann.Cas. 87, 26 L.R.A. N.S. 485].) ▮ School moneys belong to the state, and the apportionment of funds to a school district does not give that district a proprietary right therein. (*Kennedy* v. *Miller, supra,* at page 435; *Gridley School District* v. *Stout,* 134 Cal. 592 [66 P. 785].)

▮ "The application of section 31 of article IV of the Constitution depends on whether the public money is to be used for a public or a private purpose. If it is for a public purpose and is within the jurisdiction of the appropriating board or body it is not, generally speaking, to be regarded as a gift. (*City of Oakland* v. *Garrison,* 194 Cal. 298, 302 [228 P. 433]; *People* v. *Standard Accident Ins. Co.,* 42 Cal.App.2d 409, 413 [108 P.2d 923]; *County of San Diego* v. *Hammond,* 6 Cal.2d 709, 724 [59 P.2d 478, 105 A.L.R. 1155].)

"The education of the young is a public purpose of the greatest importance, fraught with no less consequence than the purposes for which the expenditure of public funds was approved in *O'Dea* v. *Cook,* 176 Cal. 659 [169 P. 366] (police pensions), *Allied Architects' Assn.* v. *Payne,* 192 Cal. 431 [221 P. 209, 30 A.L.R. 1029] (veterans' memorial hall), and the various purposes mentioned in *County of Los Angeles* v. *La Fuente,* 20 Cal.2d 870, 877 [129 P.2d 378]. The furnishing of textbooks for free use by high school students is an aid to education and is not within the constitutional inhibition of the making of a gift to any individual. (*MacMillan Co.* v. *Clarke,* 184 Cal. 491, 499 [194 P. 1030, 17 A.L.R. 288].)

"It is clear from the foregoing citations that by reason of the fact that the school funds involved in this action are to be used for general educational purposes, and that neither of defendant districts is a municipal corporation, the contracts in question do not contemplate the making of a gift of public funds by the Compton District in violation of the constitutional prohibition. The expired contract and the one about to be executed are contracts that the board of trustees of said district was authorized by law to enter into, unless in so doing they were guilty of an abuse of discretion."

Additional cases supporting the trial court's views in this respect are *Edmondson* v. *Board of Education,* 108 Tenn. 557 [69 S.W. 274, 58 L.R.A. 170], and *Edwards* v. *State,* 143 Ind. 84 [42 N.E. 525].

The conclusion at which we have arrived upon the issues herein discussed make it unnecessary to consider other points raised on this appeal.

For the reasons herein stated we are of the view that the judgment should be affirmed, and it is so ordered.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied February 11, 1947, and appellant's petition for a hearing by the Supreme Court was denied March 20, 1947.