[Civ. No. 11988. Third Dist. Jan. 23, 1970.]

CHICO UNIFIED SCHOOL DISTRICT, Plaintiff and Respondent, v. BOARD OF SUPERVISORS OF BUTTE COUNTY et al., Defendants and Appellants.

**COUNSEL**

George P. Kading, County Counsel, for Defendants and Appellants.

Peters, Fuller & Byrne and David H. Rush for Plaintiff and Respondent.

## OPINION

BRAY, J.*—Appellants appeal from judgment granting respondents' petition for writ of mandate compelling appellants to pay respondents $7,027.28 with interest.

### QUESTIONS PRESENTED

1. Is section 19685 of the Education Code constitutional?

2. Does section 19685 of the Education Code require payment by the county to the school district of a proportion of the cost of construction of facilities for education of orthopedically handicapped minors, although not in the county budget?

### FACTS

On November 10, 1965, the Pleasant Valley School District, predecessor of respondent Chico Unified School District (hereinafter Chico District) applied, under section 19681, et seq., of the Education Code, to the California State Allocation Board for an allocation for school housing aid for exceptional children. The application was approved. In August 1965, Chico District, with approval of the Butte County Superintendent of Schools (without the knowledge of the Butte County Board of Supervisors) applied to the allocation board for revision of the application to comply with the 1965 amendments to section 19685, referring to the facility constructed and operated as the Marigold Orthopedically Handicapped School. This amended application was approved. Prior to the 1965-1966 school year, the facilities were completed, and in that school year were used for the purposes intended, mainly that of maintaining programs for orthopedically handicapped minors of the district.

In August 1966, Chico District requested appellant supervisors to pay to it $7,027.28 being the pro rata share of the county of the cost of construction of said facility according to the formula described in section 19685. The board of supervisors had no information of the construction nor had any request or demand by Chico District or the school superintendent been made prior to August 1966. No appropriation for these facilities was in the budget. The county refused to pay. Chico District then filed in the superior court a petition for writ of mandate to compel payment. Defendants appeal from the judgment ordering payment.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## 1. Is Section 19685 of the Educational Code Constitutional?

Appellant contends that section 19685 is unconstitutional in that it violates article XI, section 13, of the California Constitution because it, in effect, permits the county superintendent to levy or cause to be levied a tax. The constitutional section provides "The Legislature shall not delegate to any . . . individual any power . . . to levy taxes or assessments."

Section 19685 provided in 1966, at the time that the county superintendent of schools applied to the board of supervisors for a pro rata share of the school district's obligation to repay the state allocation board for the cost of construction of the facility, that, with the approval of the county school superintendent a school district could apply to the state board for an allocation of moneys to construct facilities for instruction of handicapped children; that 50 percent of the allocation should be repaid; 10 percent as provided in Education Code sections 19551 to 19562, inclusive, and 40 percent in such annual amounts as the board might determine, not to exceed 20 years.[1]

As before stated, section 19685 requires the county board of supervisors to pay the school district the county's proportion of the moneys which the school district must repay the state. The section then provides: "The county board of supervisors may raise the amount required through a general tax levy or through a tuition charge not to exceed one hundred sixty dollars ($160) a year per pupil by the county superintendent of schools to the school districts of residence of pupils attending the facility other than the district having the obligation to repay or through a combination of these." The section further provides that the allocation board upon application of a school district and written approval of the county superintendent may amend any apportionment previously received by the district in which event all the incidents of the section shall be deemed applicable thereto.

■ As stated in *Butler* v. *Compton Jr. College Dist.* (1947) 77 Cal. App.2d 719, 728-729 [176 P.2d 417], "A school district is an agency of the state [citations]; the school system is a matter of general state concern . . . ." Even "[t]he beneficial ownership of the fee title to school district property is in the state and the district holds legal title as trustee." The Legislature has seen fit in section 19685 to provide that a school district may receive from the allocation board moneys to build facilities for handicapped children (title of such facilities as above stated will be in the state) and has provided that a certain portion of such moneys shall be paid by the county to the school district to repay moneys required to be repaid the state.

---

[1] It is the county's proportion of this 40 percent repayment for the year 1966 with which we are concerned.

■ The Legislature in 19685 has provided the procedure by which the school district receives its allocation, namely, by an application to the allocation board. Although the superintendent must approve the application, it is not his application, it is the district's. The Legislature has made it mandatory that when the state allocation board has approved the school district's application for moneys to build these school facilities, the county must pay a certain proportion of the moneys advanced by the state. The county board of supervisors in obtaining the money to pay the county's share has the option of levying a tax therefor or of obtaining the money by a tuition charge. The superintendent of schools does not directly or indirectly levy a tax or provide for a tuition fee. It is the legislative enactment put into effect by the allocation board and the school district which requires the county to pay its proportionate cost of the facility.

This is not a situation comparable to that in *City & County of San Francisco* v. *Broderick,* 125 Cal. 188 [57 P. 887], where the court held unconstitutional a statute which permitted certain officers to appoint as many deputies as may be necessary to discharge the duties of the office, holding that if the officers were allowed to appoint deputies at will and make their salaries a charge on the county "[S]uch a construction would result in a grievous interference with the county funds, and would come clearly within the purview of section 13, article XI of the constitution." (P. 193.)

Section 19685 is not unconstitutional.

## 2. SECTION 19685 OF THE EDUCATION CODE.

■ Appellant admits "that there is a requirement placed upon the school district to maintain facilities for the classes of children covered in Section 19685 of the Education Code, and the facility which we are discussing here falls in the category of a mandatory facility included within financing Sections of 19681 through 19689 of the Education Code. The mandatory provisions for the education of these retarded children are found in different provisions of the Education Code."

It appears to be appellant's contention that if section 19685 is constitutional, the failure of the district and the county superintendent of schools to present demand for the pro rata cost of the facilities prior to the supervisors' budget time relieves the county of any responsibility in this behalf for that fiscal year. In other words, applying for such payment in August 1966 came too late. Thus, the question to be determined is whether the failure of the county school superintendent to apply for payment by the county before the budget was adopted is fatal.

Appellant points out that in the past, the superintendent of schools

maintained such facilities by renting them from public schools or individuals, and that in anticipation of providing such facilities, he each year presented a budget to the county board of supervisors. The board then considered and approved such budget or appropriated funds as a part of the budget expenditure of the superintendent for the fiscal year. The budget presented by the superintendent for the fiscal year 1965-1966 did not include any item for the pro rata cost of the construction of this facility. Moreover, says appellant, the original application to the allocation board was made and the application granted in 1960, when section 19685 of the Education Code contained no provision requiring the county to pay any portion of the cost of the construction of these facilities. However, such obligation was first provided by the 1965 amendment to section 19685 sometime after the facility was completed and in use.

Section 29120 of the Government Code provides, in pertinent part, that the board of supervisors in any county shall be limited in the making of expenditures or the incurring of liabilities, to the amount of the appropriations allowed by the budget. Section 29122 provides that the board of supervisors shall approve no claim, and the auditor shall issue no warrant, for any expenditure in excess of the budget appropriation except upon the order of a court of competent jurisdiction, for an emergency, or as otherwise provided by law.

Section 29127 provides for certain emergency expenditures. Subdivision (f) of that section reads "To meet mandatory expenditures required by law."

■ There are two situations applicable to the matter before us in which the board of supervisors of a county may provide moneys not budgeted—where the expenditure is "otherwise as provided by law" (§ 29122, Gov. Code) and "to meet mandatory expenditures required by law" (§ 29127, Gov. Code). As pointed out, section 19685 of the Education Code provides by law and makes it mandatory that when the allocations board provides the money for the construction of facilities for handicapped children, the county board of supervisors "during any fiscal year shall at such time or times within such fiscal year as may be agreed upon between the county and the school district, but in any case not later than the end of such fiscal year," pay the county's proportion of the moneys which the school district must repay the state. ■ The time within which the county school superintendent and the board shall arrange for the payment of such moneys is not limited to the budget time. The payment may be made at any time before the end of the fiscal year. Thus, in spite of the fact that the demand for the money was not made in time for the budget, the money is due and the county must pay it. ■ This determination brings the matter

within a third exception to the budget rule, namely, "an order of a court of competent jurisdiction." (§ 29122.)

That the county's obligation to pay the school district, once the board of allocation has provided the moneys for the school construction, is a mandatory one is illustrated by the fact that the amendment of section 19685 of the Education Code in 1967 does not provide for approval by the board of supervisors before the school project is applied for to the board of allocation. That amendment provides "The county superintendent of schools shall notify the county board of supervisors of his intention to approve a school district's application for an allocation under this article [sections 19681 to 19689, inclusive] before he approves the application."[2]

The judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.

---

[2]Appellant further challenges the constitutionality of the finance section on the basis that the Legislature cannot impose a tax upon counties or other local bodies for a "municipal" purpose. (Cal. Const., art. XI, § 12.) However, essentially the same question was considered in *MacMillan Co.* v. *Clarke* (1920) 184 Cal. 491 [194 P. 1030, 17 A.L.R. 288], where it was held, in effect, that education of children is not considered a municipal purpose. See also *Butler* v. *Compton Jr. College Dist.* (1947) 77 Cal.App.2d 719, 728 [176 P.2d 417], where the Legislature had declared the providing of adequate school buildings a matter of state interest, and the court held that a school district is not a "municipal corporation."