

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Wardlow Lane
District Attorney
Center, Texas

Dear Sir:

Opinion No. 0-2103
Re: Whether or not consolidated
common school district trus-
tees may pay attorney fees
out of school funds for rep-
resenting four previous trus-
tees in quo warranto suit.

This is in reply to your letter of March 18, 1940, requesting the opinion of this department upon the following matter:

"Last fall four of the seven trustees of the Paxton Consolidated Common School District had suits filed against them to oust them from office. These four employed attorneys to represent them in this suit which alleged among other things the improper handling of the school funds.

"Finally the case was settled by all seven of the trustees tendering their resignation and the county board appointed seven more. Now then, can this new board pay out of the school funds of this district the fees of the attorneys who represented the four trustees Quo warranto suit that was brought against them to oust them from office?"

It is too well established to require a citation of authorities that the present trustees of the consolidated common school district in question have no power or authority to ratify or approve illegal contracts of previous trustees. Your inquiry then is narrowed to a determination of whether or not school trustees may legally employ attorneys to defend them in a suit in the nature of a quo warranto brought to oust them from office for official misconduct, so as to constitute a charge upon school funds of the district.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENT

4779

There are two well established principles of law by which we must be guided. They are first that:

"A quasi public corporation, such as a school district, which owes special duties to the public, may not enter into any contract that is not expressly authorized by law or necessarily implied from powers expressly granted." McCorkel v. District Trustees, etc. (C.C.A.1938), 121 S. W. (2d) 848.

And second that:

"A school district is a quasi corporation of a public nature, and the trustees of said district cannot lawfully expend money belonging thereto except for the purposes authorized by statute." Adams v. Miles ( Com. App.), 35 S. W. (2d) 123.

In deciding whether or not authority to so employ attorneys exists the following articles of the Revised Civil Statutes of 1925 (Vernon's Edition) must be considered:

"Article 2748. Said trustees shall be a body politic and corporate in law, and shall be known by and under the title and name of district trustees of district number ___, and county of ____, State of Texas; and as such may contract and be contracted with, sue and be sued, plead or be impleaded, in any court of this State of proper jurisdiction, and may receive any gift, grant, donation or devise made for the use of the public schools of the district. All reports and other official papers shall be headed with the number of district and name of county."

"Article 2749. Said trustees shall have the management and control of the public schools and public school grounds; and they shall determine how many schools shall be maintained in their school district, and at what points they shall be located; provided, that not more than one school for white children and one school for colored children shall be established for each sixteen square miles of territory or major fraction thereof, within such district; and they shall determine when the schools shall be opened

and when closed. They shall have the power to employ and dismiss teachers; but in case of dismissal, teachers shall have the right of appeal to the county and State Superintendents. They shall contract with teachers and manage and supervise the schools, subject to the rules and regulations of the county and State Superintendents; they shall approve all claims against school funds of their district; provided, that the trustees, in making contracts with teachers, shall not create a deficiency debt against the district."

"Article 2827. 1. The State and county available funds shall be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed on short time to pay salaries of teachers and superintendents, when these salaries become due before the school funds for the current year become available; provided that no loans for the purpose of payment of teachers shall be paid out of funds other than those for the then current year.

"2. Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purposes enumerated for State and county funds and for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employes, for buying school sites, buying, building and repairing and renting school houses, and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees, the accounts and vouchers for county districts to be approved by the county superintendent; provided, that when the State available school fund in any city or district is sufficient to maintain the schools thereof in any year for at least eight months, and leave a surplus, such surplus may be expended for the purposes mentioned herein.

". . ."

It is quite apparent that the Legislature has given no express authority to consolidated common school district trustees to employ counsel to represent them and

Honorable Wardlow Lane, Page 4

provide for their payment with school funds in litigation of any nature, and Article 2827 has circumscribed their authority to spend school funds. Is the power necessarily implied from powers which are expressly granted?

As stated in 37 Tex. Juris at page 945:

"Even in the absence of power expressly conferred, trustees may employ attorneys to institute and prosecute actions in their behalf as a necessary incident of their powers to contract, to sue and manage and control the school affairs and interests. Likewise they may pay such attorney a reasonable compensation out of the special maintenance fund in the management and control of the trustees."

An example of this rule is the case of Arrington v. Jones (C. C. A.) 191 S. W. 361, one of many of its kind holding that school trustees may employ an attorney "to represent them in legal proceedings respecting school affairs." See also Harding et al v. Raymondville Independent School District (C.C.A. 1932), 51 S. W. (2d) 826; Stewart v. Newton Independent School District (Civ. App. 1939), 134 S. W. (2d) 429. The representation in such instances, however is of the school trustees as a body corporate, and in no instance have we found authority for the proposition that school funds may be used to pay attorney's fees incurred in a personal suit against the trustees to oust them from office.

Indeed, the rule allowing the school trustees to employ attorneys and compensate them out of the public school funds is limited to matters involving school affairs wherein the interests of the school are involved. Denman v. Webster, 139 Cal. 452, 73 Pac. 139; Byrne v. Covington Board of Education, 140 Ky. 531, 131 S. W. 260; Templin v. Fremont District, 36 Iowa 411; Oklahoma City Board of Education v. Thurman, 121 Okla. 108, 247 Pac. 996; McKinnon v. State, 70 Fla. 561, 70 So. 567, Walker et al v. Walter et al (C.C.A. 1922), 241 S. W. 524; Graves & Houtchens v. Diamond Hill Indl School District (C.C.A. 1922), 243 S. W. 638.

As stated in Vol. 24 of Ruling Case law at page 597:

"The question has frequently arisen as to the propriety of the expenditure of school funds in counsel fees. Broadly speaking a school district having the power to sue and be sued may

Honorable Wardlow Lane, Page 5

employ an attorney if the employment is neces-
sary for the protection of the public interests
committed to it. The power to employ includes
the power to compensate. But the power to em-
ploy counsel exists only where a public interest
is concerned which the board is charged by law
with the duty to protect, and of course school
funds cannot be used to pay costs or counsel
fees in actions brought ostensibly in relation
thereto, but in reality for the benefit of pri-
vate persons. The question usually arises and
is most difficult to determine where statutes
exist providing that some legal official shall
act as counsel for the board. If the statute
requires such officer to appear for the district,
it cannot employ another in his place, if he is
able and willing to act, though it may, in a
proper case, employ an assistant counsel; and
a statute permitting the employment of special
counsel when necessary is constitutional. These
decisions depend largely on the local statutes,
and are frequently of little value as authority
beyond the particular jurisdiction. Where a
school district is expressly authorized to em-
ploy counsel for certain purposes its authority
will be limited strictly to the powers granted."

In Denman v. Webster, supra, it was held that the
power of the school board to employ counsel exists only
where a public interest is concerned which the board is
charged by law with the duty to protect, and that the school
board had no authority to employ counsel in an election con-
test to determine who were the de jure members of the school
board.

In Byrne and Read v. Board of Education of the
City of Covington, supra, the question was as to the right
of six members of the board of education of Covington to
employ an attorney to sue to compel the other six members
to meet with the former, so as to proceed with the business
before the board. The court held that an attorney could
not be employed for such purposes and said:

"The board of education is a body corporate.
It is an agency of government. Its capacity to
contract is circumscribed. It can contract only
in behalf of the common school interests of the
city in any event. It was not competent for it
to have contracted to pay the counsel fees in-
curred by its individual members in a matter
wholly among themselves. If the case had been

Honorable Wardlow Lane, Page 6

a contest between two of the litigants as to
which was entitled to the office of member of
the board, it would in a sense have involved
a matter affecting the schools of the city. So
does the action in question. But it affects
the school interests only as an incident. The
action was personal as to its parties. Any cit-
izen and patron of the school might as well
have maintained it. But the test of the lia-
bility of the board of education on the con-
tract is not whether the public body was bene-
fited by it. It is never allowed that the
state, or any of its constituent arms of gov-
ernment, though expressly permitted to make
contracts and be sued upon them, may become
liable on implied assumpsit. Public corpor-
ate bodies must not only act in a matter with-
in their jurisdiction, but in the manner ex-
pressly authorized by law, or they cannot bind
the public as for debt. So the board of educa-
tion alone could contract a debt against it-
self as a public corporation. Neither a minor-
ity of the board acting together, or whatsoever
number acting independently and personally,
could do so. Nor, in such instances, does
the question of benefit or advantage derived
by the public affect the question of the pub-
lic's liability. It must be remembered that
the public in its quality of sovereign is never
liable at all as for debt, unless it expressly
permits. And when it permits such liability
it must contract, not only for the matter, but
only in the manner expressly authorized."
(Underscoring ours)

The case of Smith v. Pittsburgh School District,
70 Pa. Super. 184, is directly in point. In that case the
school board employed attorneys to represent them in an
action instituted to restrain them from representing the
school in certain matters since an act of the Legislature
(which the defendants alleged to be unconstitutional) ter-
minated their offices during the year. Plaintiffs in the
present case were their attorneys in the previous action
which they lost; and the present action was instituted to
recover attorneys' fees. The court said:

"The holder of an office has an undisputed
right to contest the validity of legislation
which ousts him. That is personal to himself.
The will of the public is voiced by the legisla-
ture, and he who raises the contest assumes the

Honorable Wardlow Lane, Page 7

burden of establishing his right, and the burden of costs, expenses, etc., are incident to that contest. He has no vested right to an office created by the legislature, and independently of the legislative will, the public has no interest in continuing these particular persons as directors of this sub-school district.

". . .

"The old board of directors of the subschool district had no power to make these defendants liable for professional services in such a contest. The directors were exercising powers delegated to them by law, and only in the exercise of such powers, acting exclusively in their official capacities as the immediate representatives of the public and purely and in behalf, could they bind the public. . . . ." (Underscoring ours)

We believe that this is the law in Texas and opinions of previous administrations of this department are in accord with this view. See opinion dated October 11, 1937, to Honorable A. A. Miller, County Attorney, Newton County.

In Walker et al v. Walter et al, (C.C.A. 1922) 241 S. W. 524, a suit was filed to remove certain trustees of an independent school district from office, plaintiff alleging various acts of official misconduct and incompetency. The petition also prayed for a temporary injunction enjoining defendants from spending any money or funds belonging to the school district to defend the cause. The Court of Civil Appeals although reforming in part the judgment below continued the temporary injunction to prohibit the paying out of school funds for any of the expenses of litigation.

For a case similar in principle restraining common school district trustees from spending public funds which expenditures would benefit the trustees personally, see Barton v. Vickery, (C. C. A. 1916) 189 . . 1103.

The case of Graves & Houtchens v. Diamond Hill Ind. School District, (C. C. A. 1922) 243 . . 638, involved the application of principles of law similar to those involved in the instant case. In that case the trustees of the independent school district had entered into a contract with a firm of attorneys for the purpose of having them defeat certain bills pending in the Legislature. The court

Honorable Wardlow Lane, Page 8

held that the contract was ultra vires, opposed to public policy and void. In the course of the opinion Chief Justice Conner stated the rule as follows:

> "While it is doubtless true that there is power in a board of trustees of an independent school district to employ counsel and pay out of the public funds of the district a reasonable fee in cases where the interests of the district require assertion or defense in the courts of the county, we find no authority, after careful search, either expressed or implied in the statutes of this state, to employ counsel and expend the public funds of the district in the attempt to secure or defeat legislation." (Underscoring ours)

Consequently, it is the opinion of this department and you are respectfully advised that school funds of the consolidated common school district in question may not be used to pay attorney's fees incurred by certain members of a previous board of trustees in the defense of a quo warranto suit brought against them.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED APR 20, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

By Walter F. Koch
Assistant

By James D. Smullen

JDS:LM

APPROVED
OPINION
COMMITTEE