[S. F. No. 3057. In Bank.—June 24, 1903.]

## WILLIAM DENMAN, Appellant, v. REGINALD H. WEBSTER, Superintendent of Schools of City and County of San Francisco, Respondent.

BOARD OF EDUCATION—POWER TO EMPLOY COUNSEL—MANDAMUS—ADMISSION OF MEMBER TO SEAT.—The board of education of the city and county of San Francisco has the right to require the services of the city attorney in all actions or proceedings by or against such board. It has no power, express or implied, to incur expense in the employment of other counsel to defend it against a writ of mandate to compel the board to admit a person to a seat as a member of the board; and the mere refusal of the city attorney to act in such case does not justify such employment. [McFarland, J., Henshaw, J., and Beatty, C. J., dissenting.]

ID.—MANDAMUS TO SUPERINTENDENT·OF SCHOOLS—DEMURRER TO PETITION.—*Mandamus* will not lie to compel the superintendent of schools to draw his requisition upon the auditor for the expense of an attorney unlawfully employed by the board of education; and a demurrer to a petition therefor was properly sustained.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

William Denman, Appellant, *in pro. per.*

Carleton W. Greene, for Respondent.

ANGELLOTTI, J.—Appellant applied to the superior court of the city and county of San Francisco for a writ of mandate, requiring the defendant, as such superintendent of schools of said city and county, to draw his requisition upon the auditor of said city and county for the sum of five hundred dollars, to be paid to appellant upon the order of the board of education. The defendant demurred to the petition, the demurrer was sustained, the writ denied, and the petitioner appeals.

The circumstances under which appellant's said services were rendered, as alleged in his petition, were, that in October, 1900, the respondent, as superintendent of schools of said city and county, sued out an alternative writ of mandate to compel the board of education "to admit to its deliberations one W. D. Kingsbury"; that the said board of education made its order upon the city attorney requiring his services in its defense in said proceeding so brought against it; that "the city attorney, denying his jurisdiction to render said services," refused to render the same, and that the board of education thereafter employed appellant to defend it in said proceeding, and that he did defend said board, and continued to do so until March 25, 1901, when judgment was rendered therein in favor of said board; that the board approved his demand for the said sum of five hundred dollars, but respondent refused to make a requisition upon the auditor to issue a warrant therefor, and still refuses to do so.

A copy of petitioner's demand allowed by the board of education is contained in the petition, and it appears therefrom that it was sought in the action against the board to compel it to admit said Kingsbury "to participation in its deliberations and proceedings, as a member of said board."

The demurrer to the petition was properly sustained. The power to employ an attorney to assist in the prosecution or defense of actions or proceedings is not expressly conferred upon the board of education, either by the general state law or by the provisions of the San Francisco charter. Subdivision 7 of section 1617 of the Political Code, which is the only provision of the state law suggested as conferring such power,

simply authorizes boards of education and trustees of school districts to employ teachers, "also to employ janitors and other employees of the schools, and to fix and order paid their compensation." This does not authorize the employment of an attorney. The words "janitor and other employees of the schools" refer to persons employed in and about the schools and buildings, in the actual carrying on and maintenance of the schools themselves, and cannot by any reasonable construction be held to include a person rendering legal services to the board of education or board of trustees. Subdivision 2 of section 1 of chapter III of article VII of the San Francisco charter (Stats. 1899, p. 318), empowering the board of education "to employ such teachers and persons as may be necessary to carry into effect its powers and duties; to fix, alter, and approve their salaries and compensation, . . ." is of the same general nature as the provision of the Political Code hereinbefore cited, and when read in connection with subdivision 8 of the same section, empowering the board to require the services of the city attorney in all actions, suits, and proceedings by or against the board of education, cannot be held to expressly authorize the employment of an attorney to conduct the prosecution or defense of an action or proceeding.

It is suggested that the board has the implied power to employ an attorney for such purposes. If it has such implied power, every board of school trustees in the state has the same power, except so far as such board may in any particular case be limited as to the amount of expenditure by a district meeting called under subdivision 20 of section 1617 of the Political Code, for the general powers and duties of the board of education are not materially different in character from those of the board of school trustees, and the prosecution or defense of a legal proceeding may be as necessary for one as for the other. Indeed, the necessities of a board of trustees may be greater than those of the San Francisco board of education, for the charter provides that such board may have the services of the city attorney in all actions, suits, or proceedings by or against the board of education, and it must be presumed that the city attorney would render such service in every proper case.

As has been said by this court, school districts "are quasi-

corporations of the most limited powers known to the laws. The trustees have special powers, and cannot exceed the limit. They are special agents without general power to represent the district.'' (*Skelly* v. *School Districts,* 103 Cal. 652-659.) No general power such as had been conferred on the board of supervisors in the case of *Hornblower* v. *Duden,* 35 Cal. 670,—viz., ''to do and perform all such other acts and things as may be strictly necessary to the full discharge of the powers and jurisdiction conferred on the board,''—has been conferred on the San Francisco board of education by either the state law or the charter. We are of the opinion that neither boards of education nor boards of school trustees have the implied power to employ an attorney at the expense of the city or school district. Assuming, however, that such implied power may exist under certain circumstances, from the necessities of the case, the petition in this proceeding did not show any such circumstances, for it entirely failed to show that the proceeding wherein the attorney was employed was one involving any interest of the city, which it was the duty or even the right of the board of education, *as a board,* to defend. Merely because some one chooses to make the board of education a party defendant in an action or proceeding, it does not necessarily follow that some interest of the city is involved, or that the board must defend. Whatever powers and duties the board may possess, it is not one of its functions to litigate *as a board* the question who are entitled to seats as *members of the board.* Such a question is a question between those asserting diverse claims in regard thereto, and the city has no such interest therein as entitles the board of education to participate in the dispute, much less to expend school money in so doing. So far as the petition for a writ herein shows, the proceeding in which petitioner was employed was instituted solely for the purpose of having it determined whether or not the W. D. Kingsbury named therein had the legal right to participate in the deliberations and proceedings of said board, as a member thereof. Kingsbury, or Webster for him, chose that method of obtaining an adjudication as to his legal right to a seat in the board. The question was who were the members of the board of education, the same question in character that would be presented in any contest between persons for any par-

ticular office. The contest here was in reality one between certain individuals claiming to be the only members of the board and another individual claiming to be also a member. There is nothing in the law that either expressly or impliedly authorizes the board to participate as a board in the determination of such a question; and the mere fact that the board was made a party defendant could not confer such authority. Regardless of all other questions involved, the board, having no function to perform in the matter, could not legally require the services of the city attorney, or employ counsel at the expense of the city.

The judgment is affirmed.

Van Dyke, J., concurred.

SHAW, J., concurring.—I concur in the conclusion of Mr. Justice Angellotti, that the judgment should be affirmed. It may be assumed for the purpose of the argument that the defense of the proceeding for *mandamus* brought against the board by the respondent was a matter in which the board, as such, was interested, and hence that it could, under some circumstances, devote public funds in its control to the payment of an attorney to conduct such defense. But conceding this point, it does not follow that under the circumstances here existing it had authority to employ an attorney at the expense of the city school district. The board occupies a position of trust, the city school district and its inhabitants are the beneficiaries, and the school funds constitute the trust fund to be expended. As a trustee, the board is not authorized to incur a useless or unnecessary expense to the injury of the beneficiary. If the law provides an attorney upon whom the board may call when a defense to any suit is necessary, it cannot ignore this provision and put the district to the expense of paying some other attorney for services which it is the duty of the attorney thus provided to perform. As a public trustee, it cannot in such a case employ other counsel until it has exhausted every means available to it to procure the services of the attorney provided by public authority to act for it without expense. The charter provides that the board may ''require the services of the city attorney in all actions, suits, and proceedings by or against the board of education.'' (City Charter, art. VII, chap. III, sec. 1,

subd. 8.) This, by implication, makes it the duty of the city attorney to respond to and obey the requisition of the board. There is nothing in the portions of the charter relating especially to the duties of city attorney that is necessarily inconsistent with his performance of this duty, at least as applied to the circumstances of this case. There is nothing here to show that Kingsbury occupied a position which made it the duty of the city attorney to advise him, nor to show that the petitioner in the *mandamus* proceeding had consulted the city attorney about it or had been advised by him.

It is said that the school system is a state institution, and is governed by general laws, and hence that city charters cannot prescribe the duties of the school officers. This may be conceded in so far as any provision of a charter may conflict with a general law on the subject, but where the general law is silent the charter will be allowed to control. The general law contains no provision directing the board in the employment of an attorney. The school system may not be a municipal affair in the sense that a provision of the charter in reference thereto can prevail over a general law. Yet it must be admitted that the duties of the city attorney and his compensation are municipal affairs, and that charter provisions concerning the same are binding on that officer. The city charter fixes his salary and makes it his duty to defend the board free of expense to the school fund. The board, occupying fiduciary relations, is, under the general principles governing such relations, bound to avail itself of this opportunity to avoid paying out the money of the district, and to make its requisition on the city attorney, as it did in this instance.

If this were the end of the matter, and the refusal of the city attorney were final, perhaps it might follow that the board could then employ other counsel, as it did attempt to do. But there is a further opportunity open to the board to relieve the fund from this expense and obtain counsel at the expense of the general city fund. The charter further provides that the mayor may for cause suspend the city attorney and appoint some person to discharge the duties of the office during the suspension. This offers the board a further remedy, which it must pursue in order to fulfill its fiduciary obligations. Intentional neglect of duty is good cause for suspension. When the city attorney refused to defend the

proceeding for the board, it should at least have attempted to procure his suspension and the appointment of another person who would perform the duty. It should have stated the refusal to the mayor, and demanded the suspension of the city attorney and the appointment of another person as city attorney *pro tempore.* If the mayor had refused, then, if at all, would the board be justified in employing another. As stated before, it can be only when all other means fail, when the necessity is without alternative, that the extraordinary power exists to employ counsel at the expense of the funds of the district. The power of boards of education and boards of school trustees to employ counsel, if any they have, exists only from necessity. It is a power that is liable to be abused if given without limitations or restrictions. This court ought not to lay down a rule which would sanction the use of the power where by any possible effort the necessity might be avoided. As such necessity has not arisen, we need not decide the question of the existence of the power when it does arise.

The board is a public body with limited powers, and the person who contracts to render services in its behalf acts at his peril, and is bound to see that the right to employ him exists. If he performs services in a case where the right does not exist, he can claim no estoppel against the board, and he can have no recourse, except to the individual members who employed him, in case they have made themselves personally liable. Otherwise, he is without remedy.

LORIGAN, J., concurring.—I concur in the affirmance of the judgment, on the ground solely that it was the duty of the board of education to require, and to take all necessary measures to compel, the city attorney to defend, as it was his duty to do, the suit brought against it by Kingsbury.

The charter of San Francisco in this respect provides that the board shall have power "to require the services of the city attorney in all actions, suits, and proceedings by or against the board of education." This is a plain requirement that the board shall demand his services, and that he shall respond to the demand. His simple refusal did not authorize the board to engage other counsel. A charter requirement whose obvious purpose is to prevent the board from using

moneys primarily devoted for educational purposes in paying expenses of litigation is not to be so lightly brushed aside. If such construction is to obtain, the charter provision would be rendered nugatory, and a simple demand and refusal would be sufficient warrant to the board to override the law.

Whether the board under any circumstances would have the implied power to employ counsel is, to my mind, not here involved. No peculiar circumstances are shown in the case which makes its consideration necessary, and it will be time enough to dispose of that question when it arises.

McFARLAND, J., dissenting.—By the Political Code boards of education are given power, among other things, "to prescribe and enforce rules . . . for their own government," and to "transact their business at regular or special meetings"; to "manage and control the school property within their districts"; to purchase various kinds of personal property necessary for the use of schools; "to rent, furnish, repair, and insure school property"; "to make conveyances" of all school property sold by them; to employ teachers, janitors, "and other employees of the schools"; and to do other things involving contracts. (Pol. Code, sec. 1617.) It is quite apparent that in performing many of these duties the board may not be able to escape litigation. It may be sued on a contract for supplies where the contractor had violated the contract, and where it is the plain duty of the board to refuse payment; it may be sued to recover a school lot or other property under its control; it may be compelled itself to institute an action for the protection of such property, or to remove obstructions in the way of performance of its duties. The records of this court show numerous instances of litigation into which boards of education have been forced, and the right of such boards to sue and be sued has been universally recognized. (See cases cited in the opinion of the court in *Mitchell* v. *Board of Education,* 137 Cal. 375.) From the nature of the duties imposed upon the board, as above stated, and its right to sue and its subjection to the burden of being sued, it has the clearly implied power, in certain cases at least, to employ an attorney to prosecute or defend an action or proceeding to which it is a party. And we think that the action described in the complaint was

a proper case for the exercise of that power. The attempt of an unauthorized intruder, by legal proceeding, to force himself upon the board, and participate in its deliberations and acts, was something which it was the duty of the board, in its collective and corporate capacity, to resist. It was not a matter merely affecting members of the board individually; it did not propose to oust any individual member; it did not present a contest between two persons as to their respective hostile claims to a particular seat in the board. It aimed to change the very nature and constituent parts of that body, and to prevent it, as legally constituted, from the regular and orderly performance of its duties. It cannot be successfully contended that it was not the duty of the board to resist this attempt, or that in such cases it should, by default, allow as many persons to be thrust upon it as might choose to apply. It was its duty to the public to preserve its integrity and to itself perform the duties intrusted to it by the people under the law. The provision of subdivision 20 of section 1617 of the Political Code, limiting to some extent the expenses of litigation, applies only to school trustees who are alone named, not to boards of education. In *Kennedy* v. *Board of Education*, 82 Cal. 489, in answer to the contention that because section 1617 provides that "no board of trustees shall enter into" a contract with a teacher beyond a certain limited period, therefore a board of education could not do so, the court said: "This section contains no limitation as to the time for which a board of education in a city may employ a teacher. There is such a limitation, but it is confined in terms to the boards of trustees."

It is contended that even if the board had the power under the Political Code to employ counsel, such power was destroyed by a provision of the municipal charter of the city and county of San Francisco touching the duties of the city attorney. That provision, however, is only that "in addition to the power conferred by the general laws of the state, the board of education shall have power . . . to require the services of the city attorney in all actions," etc. This is not an attempt to curtail the power of the board under the general laws of the state; it only attempts to enlarge that power. Moreover, in the case at bar, the board did request the services of the city attorney, and he refused them. (It

seems that the city attorney looked upon the case as one between two city officials, and that it was not his duty to appear for one as against the other.)    But it is clear that the right of the board to have counsel could not be cut off by the refusal of the city attorney, for any reason, to appear for it.    Moreover, if the charter provision could be construed as intending to restrict the board to the city attorney as its counsel, the right of employing counsel, which the board has under the general laws of the state, could not be thus destroyed.    A school district derives its powers and functions from the Political Code, the general law of the state; and those powers and functions cannot be destroyed or curtailed by municipal authority.    (*Kennedy* v. *Miller,* 97 Cal. 429; *Bruch* v. *Columbet,* 104 Cal. 350; *Mitchell* v. *Board of Education,* 137 Cal. 372.)

For the foregoing reasons I think that the case described in the complaint—at least as presented by the complaint— was one to which the implied power under the code to employ counsel applies, and that the demurrer to the complaint should have been overruled; whether or not the appellant could have made any defense on the merits is a question not before us.    The legal aspect of the question involved here is not affected by the suggestion that the conclusion here reached gives to the board the opportunity of abusing its power of employing counsel; the legislature, if it sees fit to do so, can restrain that power by limiting it to enumerated instances.

Henshaw, J., and Beatty, C. J., concurred in the dissenting opinion.

Rehearing denied.