[L. A. No. 8352. In Bank.—March 28, 1928.]

M. L. WARD, Respondent, v. SAN DIEGO SCHOOL DISTRICT et al., Appellants.

S. J. Higgins, City Attorney, and Arthur F. H. Wright, Deputy City Attorney, for Appellants.

Ward, Ward & Ward for Respondent.

THE COURT.—A hearing was granted by this court after decision by the district court of appeal, in and for the second appellate district, division one, affirming the judgment of the trial court. Upon a full and careful reconsideration of the questions involved in this appeal we are of the opinion that the district court of appeal was correct in its reasoning and conclusion upon the merits of this appeal. We therefore hereby adopt the opinion of that court, written by Mr. Justice Houser, affirming said judgment, which opinion reads as follows:

"The appeal here was taken from a judgment rendered in favor of the plaintiff and against the defendants in an action brought to recover the sum of $2,250, which was the unpaid balance due on a contract for legal services rendered by plaintiff to the defendants in connection with the defense of certain litigation which arose from the construction of a school building by the defendant school district.

"It is contended by the appellants that neither the San Diego School District nor its representatives had any authority, either express or implied, to employ the plaintiff or any other attorney to represent it in any litigation, but that in any litigation which might arise concerning either the rights or the liabilities of said school district either the city attorney of the city of San Diego, or the district attorney of the county of San Diego, was the proper attorney to represent the San Diego School District and the members of its board of education.

"The record discloses that the district attorney of the county of San Diego refused to represent the defendants in the litigation in question; and because it was generally understood that it was no part of the duty of the city attorney to represent the defendants in any way, no request was made that he do so in the litigation which forms the basis for the judgment in the action upon which the appeal herein is predicated.

"The decision of the questions here involved primarily depends upon the statutes relating thereto, together with such charter provisions of the city of San Diego as may be applicable. For the purpose of this decision only, it may be conceded that, while no statute expressly authorizes or directs either the city attorney of said city, or the district attorney of the county of San Diego, to assume charge of

litigation in which a board of education is directly interested, certain statutes, as distinguished from charter provisions, at least indicate that the duty rested with such district attorney, rather than with said city attorney. On the other hand, it is contended that by certain provisions of the charter of the city of San Diego (Stats. 1889, p. 664), the city attorney is impliedly charged with the duty of such representation. Article III, chapter 5, section 2, of the San Diego charter is as follows:

" 'It shall be the duty of the City Attorney to prosecute, in behalf of the people, all criminal cases arising upon violations of the provisions of this charter and city ordinances, and to attend to all suits, matters, and things in which the city may be legally interested; provided, that the Common Council shall have control of all litigation of the city, and may employ other attorneys to take charge of any such litigation, or to assist the City Attorney therein. He shall give his advice or opinion in writing whenever required by the Common Council, Mayor, or other city officers, and shall do and perform all such things touching his office as by the Common Council may be required of him.'

"On the part of appellants it is urged that, in accordance with the language of such charter provision requiring the city attorney to give his advice or opinion to 'the common council, mayor, *or other city officers*, . . . ' the duty of the City attorney in the litigation in question was clearly indicated. Partly in answer thereto, the respondent points to the language of such charter provision which in effect limits the duty of the city attorney to those 'suits, matters, and things *in which the city may be legally interested.*'

"In order, perhaps the first thing which requires consideration, is the question of whether members of a board of education are 'other city officers.'

"Although as a matter of first impression it might appear that all officers elected by the electors of a city were necessarily 'city officers,' upon reflection, and possibly more mature consideration of the legal aspects involved, together with the authorities handed down by the Supreme and Appellate Courts of this state, it will become apparent that the election of the several members of the board of education is merely a preliminary means of inducting such members into their respective offices and that when seated

therein they become, and henceforth are, officers of a political subdivision of the state, separate and distinct from the municipality within the boundaries of which the school district is located.

"In the case of *Kennedy* v. *Miller*, 97 Cal. 429 [32 Pac. 558], it is held that under the provisions of section 1576 of the Political Code, every incorporated city constitutes a school district, having the powers of a public corporation wholly distinct from the municipality in which it is situated. In considering the question of whether in accordance with a charter provision of the city of San Diego the funds of the school district should be deposited in the city treasury of the city of San Diego, the court said in part:

" 'Section 1576 of the Political Code declares that "each county, city or incorporated town, unless subdivided by the legislative authority thereof, forms a school district." By virtue of this legislative authority, each school district becomes a public corporation (*Estate of Bulmer*, 59 Cal. 131; *Hughes* v. *Ewing*, 93 Cal. 414 [28 Pac. 1067]), and its functions and powers as such corporation are those which are given to it by the act under which it is created. The legislative declaration that every incorporated city is a school district does not import into the organization of the school district any of the provisions of the city charter, or limit the powers and functions which, as a school district, it has by virtue of the Political Code. The city is a corporation distinct from that of the school district, even though both are designated by the same name, and embrace the same territory. The one derives its authority directly from the legislature, through the general law providing for the establishment of schools throughout the state, while the authority of the other is found in the charter under which it is organized; and even though the charter may purport to define the powers and duties of its municipal officers in reference to the public schools in the same language as has the legislature in the Political Code, yet these powers and duties are referable to the legislative authority, and not to the charter.'

"To the same effect are *City of San Diego* v. *Dauer*, 97. Cal. 442 [32 Pac. 561]; *Hancock* v. *Board of Education of the City of Santa Barbara*, 140 Cal. 554 [74 Pac. 44]; *Los Angeles City School Dist.* v. *Longden*, 148 Cal. 380 [83

Pac. 246]; *Malaley* v. *City of Marysville,* 37 Cal. App. 638 [174 Pac. 367]; *People* v. *Rinner,* 52 Cal. App. 747 [199 Pac. 1066].

"In the case of *Hancock* v. *Board of Education,* 140 Cal. 554 [74 Pac. 44], the principal of a high school brought an action on contract against the board of education. Among other things, the court said:

" 'The defendant further contends that the plaintiff should have begun the action against the city of Santa Barbara, and not against the board of education. This claim is not tenable. Every city constitutes a separate school district, including such outlying territory as may be legally attached to it. (Pol. Code, sec. 1576.) . . . A city charter adopted under the provisions of the constitution has no effect whatever upon the existence or legal character of a school district formed under the general law. The school system is a matter of general concern, and not a municipal affair. (*Kennedy* v. *Miller,* 97 Cal. 434 [32 Pac. 558].) The function of the city under the charter is simply to furnish the officers who compose the governing body of the district, and when the new charter was adopted the former board of school trustees was superseded as the governing body by the city board of education. . . . '

"The only authority which might be interpreted as being in any manner opposed to the views of the appellate courts as expressed in the cases hereinbefore cited, is that of *Ackerman* v. *Moody,* 38 Cal. App. 461 [176 Pac. 696], which case ultimately involved solely the question of whether a recall of members of the board of education was a municipal affair. It was there held that under the charter of the city of San Diego the right vested in said city not only to elect the members of the board of education, but to recall them as well. ▮ While in the course of the opinion some language may be found which in its tenor may be construed as out of harmony with that heretofore quoted herein as affecting the question of whether members of a board of education are 'other city officers,' upon consideration of the several cases to which reference has been had it will appear that because of the unanimity of the several opinions to the effect that a school district is a corporate entity separate and distinct from the municipal corporation, it would necessarily follow that the officers of the San Diego School Dis-

trict were not 'other city officers' of the city of San Diego, and, consequently, not within the purview of the provisions of the city charter which prescribes the duties of the city attorney with reference to the persons or officials whom he shall counsel and advise. Those cases, especially the cases of *Kennedy* v. *Miller,* 97 Cal. 429 [32 Pac. 558], *City of San Diego* v. *Dauer,* 97 Cal. 442 [32 Pac. 561], and *Hancock* v. *Board of Education,* 140 Cal. 554 [74 Pac. 44], are likewise convincing, if not conclusive, authority to the effect that in the circumstances surrounding the instant case the city of San Diego was in nowise 'legally interested,' which fact, according to the charter provision of the city of San Diego, was a prerequisite to the proper assumption by the city attorney of the duty of defending the litigation which was the basis of the employment of the respondent.

"To revert to the case of *Kennedy* v. *Miller,* 97 Cal. 429 [32 Pac. 558], a reading thereof discloses the fact that therein the city of San Diego was seeking to compel the county treasurer of the county of San Diego to deposit with the city treasurer of the city of San Diego certain moneys then in the custody of such county treasurer, which had been derived in part from the public school fund and apportioned to the San Diego School District. Although the city charter expressly provided for the eventual custody of such funds in the city treasury, the ruling of the Supreme Court was to the effect that such provision did not supersede the requirements of the Political Code that all moneys belonging to the school fund should be paid into the county treasury.

"In the Dauer case, *supra* (97 Cal. 442 [32 Pac. 561]), the city of San Diego sought to enjoin the county treasurer of the county of San Diego from paying out of school funds a warrant for the salary of the superintendent of public schools of the city of San Diego. In the course of the opinion it is said: 'These moneys are in the treasury (of the county) to the credit of the school district, *and the city of San Diego, as a municipal corporation, has no interest therein.'*

"It therefore becomes manifest that as to each of the two requirements specified in the charter provision of the city of San Diego to which reference has been had, no duty was enjoined upon the city attorney to represent the school district in the litigation in question. If the city of San

Diego was in nowise 'legally interested' in the funds belonging to the school district, the injection by the city of its attorney into the litigation, while in no sense a gratuitous act, could be of no other or different effect than would legally result from a like attempted interference upon the part of a private individual, similarly situated so far as lack of legal interest in the litigation was concerned.

"The question of whether it was the duty of the district attorney of the county of San Diego to defend in the action brought against the board of education is not involved in this controversy, but if it were here involved, it need only be said that the record discloses the admitted fact that such district attorney 'refused to represent the school district in such litigation and advised the representatives of the school district to employ private counsel therein.' In such circumstances the only recourse left to the board of education was either to permit judgment to be entered against it, or to follow the suggestion of the district attorney and engage an attorney to care for its interest in the action in question. Faced by such a situation, the only concern of the school district in the premises was whether it possessed the corporate power to employ counsel. With reference thereto, in the absence of express authority, it is conceded, alike by judicial authority and by text-writers, that one of the implied powers of a corporation is to sue and be sued. While every man is presumed to know the law and authorized to represent himself in legal proceedings, as a matter of common knowledge it is almost universally accepted that such a presumption is nothing less than legal fiction, and that as a matter of fact the trained lawyer who assumes to appear for himself in litigation to which he is a party is but poorly represented. ▉ If the corporation had the implied power to become a party to the action, the incidental power therewith connected is the right to have advice of counsel. If the counsel to which by statute it is legally entitled refuse to act, its plainly authorized remedy is to employ other counsel.

"The case of *Denman* v. *Webster,* 139 Cal. 452 [73 Pac. 139], is cited by appellants herein as an authority to the effect that no implied power to employ counsel exists in a corporation of the character of that here considered. A reading of that case, however, discloses the fact that, in

terms, but one justice of the Supreme Court insisted that such was the rule, and even he admitted the existence of such power 'under certain circumstances.' Without writing an opinion thereon, a second justice of the Supreme Court concurred in the view expressed in the opinion by the first justice. In a concurring opinion by a third justice of the court it is said 'it (the school board) cannot in such a case employ other counsel until it has exhausted every means available to it to procure the services of the attorney provided by public authority to act for it without expense.' A fourth justice in effect concurred in such opinion. In a dissenting opinion, which was written by a fifth justice and concurred in by two other justices, it is said:

"' . . . It is quite apparent that in performing many of these duties (thereinbefore enumerated) the board may not be able to escape litigation. It may be sued on a contract for supplies where the contractor had violated the contract, and where it is the plain duty of the board to refuse payment; it may be sued to recover a school lot or other property under its control; it may be compelled itself to institute an action for the protection of such property, or to remove obstructions in the way of performance of its duties. The records of this court show numerous instances of litigation into which boards of education have been forced, and the right of such boards to sue and be sued has been universally recognized. (See cases cited in the opinion of the court in *Mitchell* v. *Board of Education*, 137 Cal. 375 [70 Pac. 180].) From the nature of the duties imposed upon the board, as above stated, and its right to sue and its subjection to the burden of being sued, it has clearly implied power, in certain cases at least, to employ an attorney to prosecute or defend an action or proceeding to which it is a party. And we think that the action described in the complaint was a proper case for the exercise of that power. . . . '

"The implied power of a school board, at least 'under certain circumstances,' to employ counsel thus becomes the unanimous opinion of the members of the court. As is expressly stated therein, the controversy before the court did not involve the school board, as a corporation, but concerned only certain members of the board in opposition to another person claiming to be a member thereof. The language of the prevailing opinion with reference thereto is as follows:

'The contest here was in reality one between certain individuals claiming to be the only members of the board and another individual claiming to be also a member.' In the instant case the school board, as a corporation, was the only party interested in the litigation. Other than the statement in the concurring opinion that 'it (the school board) cannot in such a case employ other counsel until it has exhausted every means available to it to procure the services of the attorney provided by public authority to act for it without expense,' what circumstances could be more potent than the refusal to act by the attorney whose legally specified duty it was to do so is not pointed out in the Denman case. It is manifest that by a proper request that the district attorney perform his assumed duty and by his refusal to do so, everything that was practicable had been done which might have been done in the premises to procure the assistance and advice of such counsel as was presumably provided by statute. The only possible recourse remaining to the school board was that of some sort of a legal proceeding to compel the district attorney to perform his duty. But clearly such a course likewise would have involved the necessity of employing an attorney, which fact, with the element of certain and disastrous delay and, in the end, uncertainty of successful outcome, presented obstacles which we think fairly brought the case within the situation denominated by the writer of the prevailing opinion in the Denman case, namely, 'certain circumstances,' which warranted and justified the exercise by the corporation of its implied and incidental power of employing counsel.''

The judgment is affirmed.