[Civ. No. 10630. Third Dist. Dec. 18, 1963.]

PHILLIP BARNETT et al., Plaintiffs and Respondents, v. LUCY HUNT, as County Superintendent of Schools, etc., et al., Defendants and Appellants.

Richard W. Abbe, District Attorney, in pro. per., for Defendants and Appellants.

Barnett & Robertson and Rodney Robertson for Plaintiffs and Respondents.

PIERCE, P. J.—Plaintiffs-respondents, attorneys in private practice, were employed by Cedar Creek Elementary

School District by contract to oppose proceedings by which it was sought to have a portion of the district carved out and included within the boundaries of an adjoining district. The contract provided for studies, preparation of data, representation of the district by the attorneys in a hearing before the Board of Supervisors of Shasta County, and in court proceedings if necessary. Services were performed; the district was successful before the board of supervisors, which denied the petition for the boundary line change. Defendant-appellant superintendent of schools, on advice of defendant-appellant district attorney, refused to authorize payment of the agreed fee. Plaintiffs' action followed and judgment was entered declaring the plaintiffs were entitled to collect.

The basis of the ruling of the trial court was that the contract was authorized under Education Code section 906.5, enacted in 1961, which authorizes a school district to contract for the services of attorneys in private practice "to prepare and conduct school district litigation, or to assist it in the preparation and conduct of school district litigation, . . ."

The contention of appellants is that this language should be given restrictive interpretation construing "litigation" as "A contest, authorized by law, in a court of justice, for the purpose of enforcing a right." (Bouvier's Law Dictionary.) Appellants would exclude services preceding and at a hearing before the board of supervisors as being neither "litigation" nor "preparation of litigation." Plaintiffs-respondents argue, and the trial court found, that the services performed did fall within the purview of the section, thereby giving the language a more liberal construction.[1]

In our view it is unnecessary to interpret Education Code section 906.5 (which incidentally in 1963 was renumbered as section 1016 (Stats. 1963, ch. 629), then readopted with an amendment as section 906.5 again (Stats. 1963, ch. 2070)) because regardless of its applicability the contract, under the facts existing here, was valid without any express statutory authorization. This thesis will be developed below.

As stated above, plaintiffs were employed to represent the district in proposed boundary-changing proceedings.

---

[1]Appellants' sought-for definition having been given, it is only fair to show the other side of the coin. A definition of "litigation" included in Webster's New International Dictionary (3d ed. 1961) is: "3: a controversy involving adverse parties before an executive governmental agency having quasi-judicial powers and employing quasi-judicial proceedings."

The Education Code provides the following machinery for the changing of school district boundaries: (1) a petition signed by 25 per cent of the residents of the affected territory must be presented to the superintendent of schools (§ 1791); (2) if the petition is sufficient, copies thereof are transmitted to each school district affected which has 30 days within which to file written opposition to the proposed change of boundaries (§ 1792); (3) the board of supervisors then determines whether to hold a hearing or call an election (§ 1793); (4) if a hearing is to be held, notice is sent to each district affected and also posted (§§ 1794, 1811); (5) at the hearing held the board shall ''hear all persons interested.'' If it approves the petition over opposition, an election is called and held (§ 1813). Although the code sections are silent as to any order by the supervisors *denying* petitions to change boundaries, by obvious implication such an order is contemplated and, if made, will terminate the proceedings.

Under the facts of this case, in April of 1962 three residents of the Cedar Creek Elementary School District petitioned for a boundary line change under which the territory in which they lived would be transferred to the adjoining Montgomery Creek School District. Cedar Creek decided to and did oppose the change. As stated above, it employed plaintiffs who, by the terms of their contract, were ''to act as private counsel for this district and prepare information, data and studies and to prepare litigation to prevent a boundary change. ... That said attorneys be paid not less than the sum of $1,000.00 as and for services to be rendered by them in the preparation of data and to oppose said petition for boundary change, including all services necessary for them in appearing before the County Districting Committee or the County Board of Supervisors. That in the event of the County Board of Supervisors or the electors of the affected area vote for said boundary change or order said boundary change, that said attorneys be paid an additional sum of $1,500.00 ... to institute litigation in the Superior Court of the State of California for the purpose of declaring said boundary change illegal. ... That in the event said attorneys are successful in defeating the boundary change before the Board of Supervisors, the total fees due and payable to them would be $1,000.00 as provided ... above.''

Proceedings were then had as provided in the sections of the Education Code outlined above. The attorneys performed the services contracted for, including representation at the

hearing; they were successful before the board of supervisors which made its order denying the petition. With said order, the proceedings terminated.

█ If the facts related above fully covered the case, then obviously the validity of the contract would stand or fall depending upon the interpretation of Education Code section 906.5. It is additional facts which make the meaning of said section irrelevant. After the school district board had made its contract with plaintiffs its right to do so was questioned. It then sought legal advice and representation by the district attorney. The latter refused on the grounds that under the law (Gov. Code, § 26526) he owed a primary duty to represent and advise the supervisors, and since he could not serve the district as a ''party'' and the supervisors as ''judge advocate'' without conflict of interest, he was disqualified to advise the district. In this, his determination was both ethically and legally correct. (*Casmalia School Dist.* v. *Board of Supervisors*, 180 Cal.App.2d 332 [4 Cal.Rptr. 656]; see also 15 Ops.Cal.Atty.Gen. 46.) This being so, legal assistance from any public source being unavailable, must a school district in boundary-changing proceedings suffer the perils of NO legal representation? We hold not.

In *Ward* v. *San Diego School Dist.*, 203 Cal. 712 [265 P. 821], the district attorney and city attorney both refused to serve the school district because of a dispute as to which had the obligation so to do. The Supreme Court there held that in that predicament the school district had *inherent power* to contract for the services of a private attorney. In *Jaynes* v. *Stockton*, 193 Cal.App.2d 47 [14 Cal.Rptr. 49], the court, although holding that under the facts of that case (service of the county counsel being available) the school district possessed no power to employ private counsel, recognized the right to do so if ''the services required are unavailable for reasons beyond the agency's control, such as inability, refusal or disqualification of the public official to act. [Citations.]'' (P. 54.)

In the *Ward* case, *supra*, the services of the attorney were required in the defense of a lawsuit and thus there was a hiring for ''litigation'' within the Bouvier Law Dictionary definition of the word. We find no difficulty in the extension of the rule to find an inherent right of the school district lacking public attorney representation to employ private counsel to prepare for and conduct ''litigation'' within the Webster Dictionary sense (above quoted), i.e., appearances at

hearings in quasi judicial proceedings, particularly in the boundary-changing proceedings here involved. That the board of supervisors does sit quasi judicially in these proceedings cannot be questioned. (*Crane* v. *Board of Supervisors*, 17 Cal.App.2d 360 [62 P.2d 189]; *Casmalia School Dist.* v. *Board of Supervisors, supra.*) Also these particular proceedings, affecting as they do the revenue-raising potential of the district, are vital to its interests. It would be shocking for a court to say that a school district deprived of public attorney representation possesses inherent power to employ private counsel to prosecute or defend a lawsuit involving, say, a $500 debt, but possesses no power to obtain a lawyer's representation in quasi-judicial proceedings where its future existence, through decimation of its territory, may be in jeopardy.

We hold, therefore, that, without reference to Education Code section 906.5, this school district, having been deprived of representation by the district attorney, possessed inherent power to employ plaintiffs in the boundary-change proceedings.

Nothing herein stated shall be deemed as presaging decision or opinion by this court as to the interpretation properly to be given "preparation and conduct of school district litigation" as used in said section 906.5 (or § 1016) under circumstances where, because of the availability of public attorney representation, such interpretation may be mootable.

Judgment is affirmed.

Schottky, J., and Friedman, J., concurred.