TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 21-101 |
| | : | |
| of | : | September 24, 2021 |
| | : | |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| LAWRENCE M. DANIELS | : | |
| Deputy Attorney General | : | |
| | : | |

_____


The IMPERIAL COUNTY OFFICE OF EDUCATION requests leave to sue ANNETTE GONZALEZ-BUTTNER in quo warranto to oust her from her public office as a trustee of the Imperial County Board of Education. The quo warranto application alleges that ouster is required on the ground that Gonzalez-Buttner also holds a second, incompatible, public office as a trustee of the Imperial Community College Board.

We conclude that whether the doctrine of incompatible public offices precludes Annette Gonzalez-Buttner from simultaneously serving as a trustee of both the Imperial County Board of Education and the Imperial Community College Board presents substantial questions of law and fact that would ordinarily warrant a judicial resolution. Because Ms. Gonzalez-Buttner no longer holds the offices in question, however, we deny this quo warranto application as moot.

1

21-101

**INTRODUCTION AND BACKGROUND**

Schools and community colleges in California have governing boards at both the state and local level. For grades K-12, the State Board of Education, the governing body of the California Department of Education, sets statewide policy.[1] At the local level, each county has a county office of education, which supports local school districts by, among other things, formulating new curricula and planning business and personnel systems.[2] Each county office of education is headed by a county superintendent and governed by a county board of education.[3] In a "general law" county, a county board of education consists of five or seven trustees, elected by the voters of the trustee areas that they represent, for terms of four years.[4] Imperial County is a general law county, and its County Board of Education consists of five members, each representing a trustee area of the County Office of Education.[5]

California's community college system consists of community college districts, managed statewide by the Board of Governors of the California Community Colleges.[6] Locally, every community college district has a governing board of five to seven members, who may be elected at large or by trustee area.[7] The Imperial Community College District has a board consisting of seven trustees, each serving terms of four years and representing one of seven trustee areas.[8]

---

[1] Cal. Const., art. IX, § 7; Ed. Code, §§ 33000, 33030-33032; State Board of Ed. <https://www.cde.ca.gov/be> (as of Sep. 2, 2021).

[2] *San Jose Unified School Dist. v. Santa Clara County Off. of Ed.* (2017) 7 Cal.App.5th 967, 971.

[3] Cal. Const., art. IX, §§ 3, 3.2, 7; Ed. Code, § 1000; *San Jose Unified School Dist. v. Santa Clara County Off. of Ed., supra,* 7 Cal.App.5th at p. 971.

[4] Ed. Code, §§ 1000, 1007, 5017. In a "charter" county, the county board of supervisors or county charter prescribes the manner that the county board of education's members are selected. (Cal. Const., art. IX, § 3.3; Ed. Code, § 1000; see Cal. State Assn. of Counties, County Structure & Powers <https://www.counties.org/general-information/county-structure-0> [as of Sep. 2, 2021].)

[5] Imperial County Office of Ed., Imperial County Bd. of Trustees <https://www.icoe.org/about-icoe/board-trustees> (as of Sep. 2, 2021).

[6] Ed. Code, §§ 70900, 70901; 97 Ops.Cal.Atty.Gen. 62, 62 (2014).

[7] Ed. Code, §§ 70900, 70902; 97 Ops.Cal.Atty.Gen., *supra*, at p. 62.

[8] Ed. Code, §§ 5017, 72023.

The Imperial County Board of Education and the Imperial Community College Board govern the entire territory of Imperial County except a small portion in the county's northwest corner.[9]

In November 2017, Annette Gonzalez-Buttner won re-election as Trustee for Area One on the Imperial County Board of Education, for a term set to expire in December 2022.[10] In November 2020, Gonzalez-Buttner won election for the first time as Trustee for Area One on the Imperial Community College Board, for a term ending in December 2024.[11]

The Imperial County Office of Education has requested our permission to file a lawsuit in quo warranto to remove Gonzalez-Buttner from her seat on its board of education. Government Code section 1099 prohibits the simultaneous holding of multiple incompatible public offices, and the County Office contends that the two offices Gonzalez-Buttner holds—trusteeships of the county board of education and community college board—are legally incompatible based on potential clashes of duties and loyalties. As a result, the County Office asserts that Gonzalez-Buttner forfeited her position on the board of education when sworn into her position on the community college board.

---

[9] Imperial County Office of Ed., Imperial County Bd. of Ed. Trustee Area Map <https://drive.google.com/file/d/0BlhR38T5XypWT2dYWjY2ZnhjeDA/view> (as of Sep. 2, 2021); Imperial Valley College, Imperial Community College Dist. Trustee Area Map <https://www.imperial.edu/docs/board-of-trustees/district-maps/2836-ivccd-overview-map/file> (as of Sep. 2, 2021); Maps of World, Imperial County Map <https://www.mapsofworld.com/usa/county-maps/california/imperial-county-map.html> (as of Sep. 2, 2021).

[10] On July 18, 2017, the Imperial County Board of Supervisors accepted a resolution of the Imperial County Board of Education to move its staggered elections from odd to even years, commencing in 2020. (Imperial County Bd. of Supervisors, Board Agenda Fact Sheet (Jul. 18, 2017) <https://imperial.granicus.com/MetaViewer.php?view_id=2&clip_id=1115&meta_id=171700> ; see Ed. Code, § 1007, subd. (a); Elec. Code, §§ 1302, subd. (b), 10404.5, 14052.) Consequently, the next election for Gonzalez-Buttner's seat was extended from November 2021 to November 2022. (Elec. Code, § 10404.5, subd. (g).)

[11] Although both designated as "Area One" by their respective agencies, the boundaries of these two trustee areas differ.

21-101

Quo warranto is a civil action used most commonly to challenge an incumbent public official's right or eligibility to hold a given public office.[12] This form of action is codified in section 803 of the Code of Civil Procedure, which provides that "[a]n action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[13]

Where a private party[14] seeks to pursue a quo warranto action to oust an incumbent public official from office, that party (also sometimes known as the "relator") must first apply for and obtain the Attorney General's consent. In determining whether to consent to the proposed action, we do not attempt to resolve the merits of the controversy. Rather, we employ a three-part analysis that considers:

> (1) whether quo warranto is an available and appropriate remedy;

> (2) whether there is a substantial issue of law or fact concerning the official's right to hold office that warrants a judicial resolution; and

> (3) whether authorizing the quo warranto action will serve the public interest.[15]

As discussed in greater detail below, we conclude here that the first two of these three conditions are met, but that the third is not because the matter has become moot by intervening events such that Gonzalez-Buttner no longer holds the two offices at issue in the County Office's quo warranto application. Accordingly, although quo warranto would ordinarily lie to determine the compatibility (or incompatibility) of these two offices, we must deny the present application.

---

[12] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 162-163 (1993).

[13] Code Civ. Proc., § 803.

[14] We construe section 803's reference to a "private party" to include local government agencies and the officials who represent them. (76 Ops.Cal.Atty.Gen. 157, 163 (1993); see, e.g., *People ex rel. City of Alameda v. Smith* (1936) 16 Cal.App.2d 333, 334; 100 Ops.Cal.Atty.Gen. 26, 26-27, fn. 3 (2018); 78 Ops.Cal.Atty.Gen. 134, 134, fn. 1 (1995).)

[15] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

4

## ANALYSIS

### 1.    Availability of Quo Warranto Remedy

Government Code section 1099, subdivision (b), specifically directs that the forfeiture of an incompatible public office is "enforceable pursuant to Section 803 of the Code of Civil Procedure," which codifies quo warranto procedures.  Under section 1099, subdivision (a), a "public office" includes membership on a governmental board or body, such as a county board of education or a community college district.[16]  Thus, quo warranto is an available remedy here.

### 2.    Substantial Issues Regarding Incompatibility

We next examine whether there are substantial issues of law or fact as to the incompatibility of the offices in question.  Government Code section 1099 provides that "[a] public officer, including, but not limited to, an appointed or elected member of a government board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible."[17]  This prohibition applies only when each position is a public office, not "a position of employment," and does not apply where "simultaneous holding of the particular offices is compelled or expressly authorized by law."[18]  It "springs from considerations of public policy which demand that a public officer discharge his or her duties with undivided loyalty."[19]  Two offices are incompatible if one

---

[16] Additionally, as we have previously found, a trustee of a county board of education—the particular board membership being challenged in the quo warranto application—undoubtedly holds a public office.  (79 Ops.Cal.Atty.Gen. 155, 157 (1996); 31 Ops.Cal.Atty.Gen. 170, 170-171 (1958).)  The same holds true for the other allegedly incompatible position at issue, trustee of a community college board.  (56 Ops.Cal.Atty.Gen. 556, 557 (1973); 47 Ops.Cal.Atty.Gen. 79, 80 (1966).)  Under the common law standard, each is a public office because it is (1) a governmental position, (2) created by law, (3) having a continuing and permanent tenure, (4) in which the incumbent performs a public function for the public benefit and exercises some of the state's sovereign powers.  (*Moore v. Panish* (1982) 32 Cal.3d 535, 545; *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 637-640; 98 Ops.Cal.Atty.Gen. 94, 96-97 (2015).)

[17] Gov. Code, § 1099, subd. (a).

[18] Gov. Code, § 1099, subds. (a), (c).

[19] 68 Ops.Cal.Atty.Gen. 337, 339 (1985).

5

of them has supervisory, auditory, removal, or veto power over the other.[20]  They are also incompatible if "there is a possibility of a significant clash of duties or loyalties between the offices."[21]

To find that two public offices are incompatible, a conflict need not have actually occurred; it is enough that a conflict may occur in the regular operation of the statutory plan.[22]  Indeed, "[o]nly one potential significant clash of duties or loyalties is necessary to make offices incompatible."[23]  A finding of incompatibility does not allow the conflicted officeholder to "'omit to perform one of the incompatible roles.  The doctrine was designed to avoid the necessity for that choice.'"[24]  Instead, upon a finding that two offices are incompatible, "a public officer shall be deemed to have forfeited the first office upon acceding to the second."[25]  Here, as noted above, both of the positions at issue are public offices.  And it is the first office—an elected trustee of the County Board of Education— that would be forfeited upon a judicial finding of incompatibility.

Turning then to the issue of incompatibility of these public offices, as a threshold matter, we dispose of two statutory provisions set forth above as inapplicable here.  First, the simultaneous holding of the two public offices held by Gonzalez-Buttner is not "compelled or expressly authorized by law," so the exception in Government Code section 1099 presents no bar to our consideration of potential incompatibility.[26]  Second, neither office has supervisory, audit, removal, or veto power over the other, so this theory may be eliminated as a possible source of incompatibility.[27]  Accordingly, we focus our attention on whether, as the County Office contends, there may be a significant clash of duties or loyalties between the two offices resulting in incompatibility.[28]  In conducting this inquiry, we first review our past opinions for guidance.

---

[20] Gov. Code, § 1099, subd. (a)(1).

[21] Gov. Code, § 1099, subd. (a)(2).

[22] 98 Ops.Cal.Atty.Gen., *supra*, at p. 96.

[23] 85 Ops.Cal.Atty.Gen. 199, 200 (2002).

[24] 67 Ops.Cal.Atty.Gen. 409, 414 (1984), quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, pp. 295-296.

[25] Gov. Code, § 1099, subd. (b).

[26] Gov. Code, § 1099, subd. (a).

[27] Gov. Code, § 1099, subd. (a)(1).

[28] Gov. Code, § 1099, subd. (a)(2).

6

Although we have not previously undertaken a full analysis of whether the two offices at issue here are incompatible, we have previously concluded that a county board of education trustee may not simultaneously serve as a State Board of Education trustee[29] and that a separate county board of education trustee may not simultaneously serve as a county planning commissioner.[30] Similarly, we have found that a local community college trustee may not serve as a State Assemblymember at the same time.[31]

We have also previously observed that, "in the usual situation, the offices of a trustee of a school district and trustee of a community college district with overlapping boundaries would be found to constitute incompatible offices."[32] In support of this broad statement, we cited an unpublished advice letter that we issued in 1975.[33] In that informal letter, we concluded that it would violate the prohibition against holding incompatible offices for an elementary school district board member to also be a trustee of a community college district or a high school district where the jurisdictions of the two offices overlapped.[34] In reaching that conclusion, we cited several shared areas of responsibility where potential significant clashes of mutually-held powers and duties could arise. Those areas included providing community recreation; participating in joint exercise of powers agreements; acquiring real property through eminent domain; otherwise disposing of personal and real property; and

---

[29] 31 Ops.Cal.Atty.Gen., *supra*, at pp. 170-172.

[30] 79 Ops.Cal.Atty.Gen., *supra*, at p. 159.

[31] 47 Ops.Cal.Atty.Gen., *supra*, at pp. 79-81.

[32] 83 Ops.Cal.Atty.Gen. 50, 52 (2000). In that particular opinion, however, we arrived at the conclusion that the offices involved were *not* incompatible based on the unusual facts presented. Specifically, the community college district at issue was merely an advisory committee without executive authority, and thus its members did not meet the legal definition of holding a public office. In turn, this meant that the dual officeholder in that situation did not hold two public offices and so was not subject to the prohibition against holding incompatible public offices.

[33] 83 Ops.Cal.Atty.Gen., *supra*, at p. 51, citing Cal.Atty.Gen., Indexed Letter, No. I.L. 75-22 (Feb. 18, 1975). "An indexed letter is different from a formal opinion of the Attorney General, which is widely disseminated throughout the state and is ultimately published in bound volumes. Indexed letters are kept in the Attorney General's four libraries and are ordinarily made available to interested members of the public upon request." (*Cal. Coastal Com. v. Quanta Investment Corp.* (1980) 113 Cal.App.3d 579, 593, fn. 11.)

[34] I.L. 75-22, *supra*, at p. 1.

7

exercising the capacity to sue (and be sued).[35]  Later, in a published opinion, we primarily relied on this letter in concluding that the same person could not lawfully serve as trustee of both a high school district and an elementary school district whose territorial jurisdictions overlapped.[36]

These opinions are instructive, but none of them addresses the precise issue before us:  whether the offices of county board of education trustee and community college district trustee are incompatible.  So we proceed by identifying the duties of these offices.  Then, keeping the reasoning of these earlier opinions in mind, we ascertain whether any potential conflicts may appear where the same individual occupies both offices.

The Imperial County Office of Education, which is governed by its board of education and superintendent, works in conjunction with 16 independent school districts located within the county to provide services to help meet the educational needs of the county's students.[37]  It also operates four community schools that generally serve students who have had serious problems with discipline, attendance, or the justice system.[38]  In "establishing and maintaining" these community schools, the county board of education is "deemed to be a school district."[39]

---

[35] I.L. 75-22, *supra*, at pp. 4-5.

[36] 68 Ops.Cal.Atty.Gen. 171, 172-175 (1985); accord, 79 Ops.Cal.Atty.Gen. 284, 286-288 (1996) (granting quo warranto application as to these two offices).

[37] Imperial County Office of Ed., Imperial County Superintendent of Schools <https://www.icoe.org/about-icoe/imperial-county-superintendent-schools> (as of Sep. 2, 2021).

[38] Imperial County Office of Ed., School Sites <https://www.icoe.org/alternative-education/school-sites> (as of Sep. 2, 2021); Cal. Dept. of Ed., School Directory Search Results <https://www.cde.ca.gov/SchoolDirectory/results?districts=252&status=1&search=1> (as of Sep. 2, 2021); see Ed. Code, §§ 1980 ("A county board of education may establish one or more community schools"), 1981 (specifying requirements for enrollment in a county community school); Cal. Dept. of Ed., County Community Schools <https://www.cde.ca.gov/sp/eo/cc/> (as of Sep. 2, 2021) ("County community schools are public schools that are run by county offices of education.  They educate students in kindergarten through grade twelve who are expelled from school or who are referred because of attendance or behavior problems.  They also serve students who are homeless, on probation or parole, and who are not attending any school").

[39] Ed. Code, § 1984; 79 Ops.Cal.Atty.Gen., *supra*, at pp. 157-158.

21-101

As a general matter, the duties of a county board of education are prescribed in the Education Code.[40] In the main, a county board of education must adopt rules and regulations governing itself, approve the county superintendent's annual budget before its submission to the county board of supervisors, approve the county superintendent's annual county school service fund budget for submission to the state superintendent, and review the county superintendent's annual audit report.[41] The county board of education may also adopt rules and regulations governing the county superintendent, review and revise the superintendent's annual estimate of anticipated revenue and expenditures, contract with specially trained persons for services to the county board of education, and fill by appointment any vacancy in the office of superintendent.[42] The county board of education may also assume certain duties and functions transferred to it by the county board of supervisors. These include: approving the superintendent's estimate of anticipated revenue and expenditures; allowing for specified office expenses; implementing programs of community recreation; the acquisition, lease, or conveyance of real property for the superintendent's offices; and "any other duties and functions of an educational, or educational and recreational, nature which by law are required or permitted to be performed by the county board of supervisors."[43]

The Imperial Community College District, which is governed by its board and chief executive officer, operates Imperial Valley College.[44] As a community college, Imperial Valley College provides academic and vocational instruction through the second year of college.[45] Education Code section 70902 sets forth the duties of the governing board of a community college district. Section 70902 requires that each board "shall establish, maintain, operate, and govern one or more community colleges in accordance with law."[46] Further, each board "may initiate and carry on any program, activity, or may otherwise act

---

[40] Ed. Code, § 1040 et seq.

[41] Ed. Code, § 1040.

[42] Ed. Code, §§ 1042, subd. (c), 1080.

[43] Ed. Code, § 1080.

[44] Imperial Valley College, Imperial Community College Bd. of Trustees <https://www.imperial.edu/about/college-governance/board-of-trustees> (as of Sep. 2, 2021); Imperial Community College Dist., Bd. of Trustees eGovernance Site <https://go.boarddocs.com/ca/caiccd/Board.nsf/Public> (as of Sep. 2, 2021).

[45] Ed. Code, § 66010.4, subd. (a)(1); see Ed. Code, § 66010.4, subd. (a) (articulating missions and functions of California's community colleges).

[46] Ed. Code, § 70902, subd. (a)(1).

in any manner that is not in conflict with or inconsistent with, or preempted by, any law and that is not in conflict with the purposes for which community college districts are established."[47]  In support of its statutory mandate, the board must establish rules and regulations for the district's colleges; create policies regarding academics and facilities; employ personnel; determine the district's budgets; and manage, control, hold, and convey the district's property.[48]

An examination of the powers of these two boards reveals areas in which potential significant clashes of duties or loyalties exist for a person serving on them simultaneously.

First, both boards may approve the purchase, leasing, and disposal of real property within their overlapping jurisdictions.[49]  It is conceivable that both the office of education and the community college district would be interested in purchasing the same site.  Using the power of eminent domain, the two entities also might condemn the same property or even each other's property where a greater necessity is shown.[50]  Where one public official serves on two bodies, both of which may exercise such powers in the same area, we have found a potential conflict resulting in divided loyalty.[51]  Gonzalez-Buttner acknowledges that the boards "each have some statutory authority regarding land acquisition" but asserts that this "does not automatically create incompatibility of offices."  Gonzalez-Buttner supports her argument with the example of the Board of Regents of the University of California and the Board of Trustees of the California State University.  Both of these boards also have statutory duties regarding land acquisition.  Yet, she observes, by statute or the state Constitution, some state officials must sit on both boards:  the Governor, the Lieutenant Governor, the Superintendent of Public Instruction, and the Speaker of the State Assembly.[52]  But although state law "may override the rule against holding incompatible offices whenever it chooses,"[53] as it does in the case of these two university boards, it does

---

[47] Ed. Code, § 70902, subd. (a)(1).

[48] Ed. Code, § 70902, subd. (a)(2), (b).

[49] Ed. Code, §§ 1042, subd. (c), 1048, 1080, subd. (c), 1082, 70902, subds. (b)(6), (b)(13), 81190, 81363.5, 81600, 81601, 81606; Imperial County Bd. of Ed., Bd. Policy 3450 & Bd. Bylaw 9000; Imperial Community College Dist., Bd. Policy 2330.

[50] Code Civ. Proc., § 1240.610; Ed. Code, §§ 1047, 1080, 70902, subd. (b)(13); Imperial County Bd. of Ed., Bd. Policy 3450; 101 Ops.Cal.Atty.Gen. 56, 68 & fn. 82 (2018).

[51] 102 Ops.Cal.Atty.Gen. 31, 37 (2019); 85 Ops.Cal.Atty.Gen., *supra*, at pp. 201-202.

[52] See Cal. Const., art. IX, § 9, subd. (a); Ed. Code, § 66602, subd. (a).

[53] 102 Ops.Cal.Atty.Gen. 39, 48 (2019).

*not* authorize someone to simultaneously serve on a county board of education and community college board with overlapping jurisdictions. Therefore, the statutory authorization exception in Government Code section 1099 does not apply to the offices at issue here.[54]

Second, another significant potential clash of interests arises between these offices from the possibility that the two boards will enter into agreements with each other. A county board of education and a community college board both possess the power to enter into or approve certain kinds of contracts with each other.[55] For example, a county board of education must approve any contract between the county superintendent and a community college board "to provide for the use by the [community college] district of audiovisual equipment and apparatus."[56] In addition, both boards may enter into agreements with each other under the Joint Exercise of Powers Act to jointly exercise a power that their districts share.[57] The interests of one institution in negotiating, approving, or carrying out any of these contracts may very well differ from the interests of the other institution.[58]

---

[54] See Gov. Code, § 1099, subd. (a) (holding of incompatible offices is prohibited "unless simultaneous holding of the particular offices is compelled or expressly authorized by law").

[55] Ed. Code, §§ 1080, subd. (c), 1250, 1721, 1770, 1941, 1946, 17604, 70902, subd. (b)(6), 81645; Gov. Code, § 23004, subd. (c); Pub. Contract Code, §§ 20650, 20651; Cal. Code Regs., tit. 5, § 59502, subd. (e).

[56] Ed. Code, § 1250; see also Ed. Code, §§ 1721 (county board of education must approve any agreement with community college district board for county superintendent's preparation of courses of study), 1770 (provision of library services), 1941 (services for screening and directing teachers), 1946 (centralized in-service training programs for employees).

[57] Ed. Code, § 81603; Gov. Code, §§ 6500, 6502, 6516.6, subd. (c)(4)(E).

[58] See 101 Ops.Cal.Atty.Gen. 81, 86 (2018) ("The contractual relationship between the District and the City poses a significant potential for conflicting interests or loyalties"); 101 Ops.Cal.Atty.Gen., *supra*, at p. 63 ("Negotiating any such agreement, even if for the purpose of collaboration, would also entail a division of loyalties for a dual office holder").

11

Third, a potential conflict of loyalties stems from the fact that the members of the Imperial County Board of Education serve as the Imperial County Committee on School District Organization.[59] Upon petition of a community college board, a county committee on school district organization "may provide for the establishment, rearrangement, or abolishment of trustee areas in any community college district or increase or decrease the number of members of the governing board" of the community college district.[60] In addition, if a community college board fails to adjust its trustee-area boundaries by March 1 following the decennial census, the county committee on school district reorganization must do so.[61] The committee's approval is also required as to petitions to reorganize community college districts by means of transferring territory between them.[62] We have found that simultaneous membership on a committee on school district reorganization and a school board within that committee's jurisdiction is barred by the rule against holding incompatible public offices given this "readily apparent" potential for conflict.[63] We see the same potential for conflict here.

These three areas of potentially clashing duties and loyalties are not exhaustive; other potential bases of conflict appear. For instance, Education Code section 72104 prohibits a person from simultaneously serving on the boards of a high school district and community college district that are "coterminous."[64] Although the Imperial County Board of Education technically may not be a "high school district," its board of education acts as a "school district" in establishing and maintaining four community schools, which include

---

[59] Ed. Code, §§ 4020, 5019; Imperial County Office of Ed., County Com. on School Dist. Reorganization <https://www.icoe.org/about-icoe/county-committee-school-district-reorganization> (as of Sep. 2, 2021).

[60] Ed. Code, § 72022.

[61] Ed. Code, § 5019.5, subd. (b).

[62] Ed. Code, §§ 74108, 74110.

[63] 68 Ops.Cal.Atty.Gen. 240, 241-244 (1985); see also 101 Ops.Cal.Atty.Gen., *supra*, at pp. 66-67 (in deducing incompatibility as to the offices of county superintendent and city council member, relying in part on the county superintendent's role in advising the county board of education sitting as the committee on school district reorganization).

[64] Ed. Code, § 72104; see Merriam-Webster <https://www.merriam-webster.com/dictionary/coterminous> (as of Sep. 2, 2021) (defining coterminous as "having the same or coincident boundaries"). Whether, in this case, the boundaries of the office of education and community college district are coterminous (not just overlapping) has not been established.

12

the high-school grades.[65] It therefore might reasonably be argued that the spirit, if not the letter, of section 72104 would be implicated.[66] Also, a county board of education, by agreement with the board of supervisors, may compete with a community college board in furnishing programs for community recreation within the same jurisdiction.[67] We are also aware of a board policy of the Imperial County Board of Education that authorizes the superintendent, with the board's approval, to provide funds to the Imperial Community College District when it "does not have sufficient funds to meet current operating expenses," to be repaid by the end of the fiscal year.[68] It is axiomatic that a lender and a borrower potentially have conflicting interests. More generally, each district has the capacity to sue or be sued, and the possibility that each board may have to determine whether to sue the other and make decisions about the course of any litigation may also result in potentially clashing interests for the same person serving on both boards.[69]

In sum, we find that several potentially significant clashes of duties or loyalties might exist between the two offices at issue here, and therefore conclude that a substantial question of fact or law regarding incompatibility of offices exists.

### 3. Because of Intervening Events That Have Rendered the Incompatible-Office Issue Moot, Granting the Application Would Not Serve the Public Interest

We ordinarily view the existence of a substantial question of fact or law as presenting an adequate "public purpose" to warrant granting leave to sue in quo warranto, absent countervailing considerations.[70] As it happens, such a consideration has arisen in this case, and we must therefore deny the current application for leave to sue as moot, despite our findings that quo warranto would otherwise be available and that there are

---

[65] Ed. Code, § 1984.

[66] See Ed. Code, § 1983 (assigning the board's responsibilities in administering courses of study for county community schools); but see 83 Ops.Cal.Atty.Gen., *supra*, at p. 51 & fn. 1 (in denying a quo warranto application on another ground, noting in passing "the possibly determinative fact that . . . [Education Code section 72104] does not prescribe automatic forfeiture as a consequence of its violation").

[67] Ed. Code, §§ 1080, subd. (d), 10900-10903, 70902, subd. (a)(1).

[68] Imperial County Bd. of Ed., Bd. Policy 3420.

[69] Ed. Code, §§ 35160, 35160.2, 35162, 72000, subd. (a); *Ward v. San Diego School Dist.* (1928) 203 Cal. 712, 718-719; *Kirchmann v. Lake Elsinore Unified School Dist.* (2000) 83 Cal.App.4th 1098, 1114-1115; 79 Ops.Cal.Atty.Gen., *supra*, at p. 287.

[70] 98 Ops.Cal.Atty.Gen., *supra*, at p. 101; 95 Ops.Cal.Atty.Gen. 67, 75 (2012).

13

substantial issues of incompatibility between the two public offices that are the subject of the application.

While this application was pending, an Imperial County jury convicted Gonzalez-Buttner of four felonies—two counts of perjury, one count of grand theft, and one count of false declaration of candidacy—based on misrepresentations of her legal residence to serve on the county board of education. The trial court in the criminal case later sentenced Gonzalez-Buttner to a three-year term of imprisonment. As a result of Gonzalez-Buttner's conviction, she was removed from office on both the Imperial County Board of Education and the Imperial Community College Board.[71]

In light of these developments, the dual office-holding that served as the basis for the present application no longer exists, thereby mooting the claim that Gonzalez-Buttner holds two legally incompatible public offices. Under these particular circumstances, we do not believe it is in the public interest to authorize the initiation of a quo warranto lawsuit—which would consume scarce judicial resources—to litigate a moot question. For these reasons, and despite our analysis and conclusion as to the merits of the incompatibility issue, the application for leave to sue in quo warranto is DENIED.

*****

---

[71] See generally Gov. Code, § 1770, subd. (h).